### SNYDER v. NEW YORK CENTRAL TRANSPORT COMPANY.

1. WITNESSES—NAME NOT KNOWN AT PRETRIAL.
    Contention of plaintiff in negligence case that trial judge erred in permitting defendant to call an expert witness where defendant had not indicated intention to use such witness at pretrial hearing *held*, not well taken, as the pretrial order could only apply to witnesses known at the time, and defendant informed plaintiff of the witness' name as soon as it was known he would appear, and in sufficient time so that plaintiff could have prepared to meet his testimony.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am Jur 2d, Depositions and Discovery § 188.
[2, 10–12] 20 Am Jur, Evidence §§ 802, 805.
    Opinion evidence as to speed of automobile or motorcycle.  70 ALR 540, 94 ALR 1190.
    Admissibility of evidence as to tire tracks or marks on or near highway.  23 ALR2d 112.
[3] 20 Am Jur, Evidence § 764.
[4, 5] 20 Am Jur, Evidence § 765.
[6] 58 Am Jur, Witnesses § 844.
[7] 58 Am Jur, Witnesses § 844.
[8] 20 Am Jur, Evidence § 787.
[9] 20 Am Jur, Evidence § 782.
[13, 14] 5 Am Jur 2d, Appeal and Error § 891.

2. SAME—SPEED—COLLISION EXPERT.

Witness who was a graduate and registered engineer and professor of mechanical engineering at a university, with extensive experience in conducting experiments and safety programs in various automotive collision conditions *held,* to have been a qualified expert to testify in case involving determination of speed from skid marks made by plaintiff's car prior to its collision with rear portion of defendants' 47' tractor-trailer combination early in the morning on a comparatively dry pavement in a well-lighted area.

3. EVIDENCE—OPINION.

Opinion, in the law of evidence, is an inference or conclusion drawn by a witness from facts.

4. SAME—WITNESSES—OPINION.

Ordinarily a witness is to be restricted to facts within his personal knowledge, and his opinion or conclusion with respect to matters in issue, or relevant to the issue, may not be received in evidence.

5. SAME—OPINION.

Opinion evidence will not be received where all the relevant facts can be introduced in evidence and the jury is competent to draw a reasonable inference therefrom.

6. SAME—EXPERT WITNESS—PROFESSIONAL OR SCIENTIFIC KNOWLEDGE OR SKILL.

The conclusion of an expert witness may be stated as evidence, when the conclusion to be drawn from the facts depends on professional or scientific knowledge or skill.

7. SAME—EXPERT WITNESS—OPINION—CROSS-EXAMINATION.

An expert witness may state his opinions and reasons therefor without first specifying data on which it is based, but upon cross-examination he may be required to specify the data (GCR 1963, 605).

8. SAME—OPINION—SUPPORTING DATA.

The trial judge, in his discretion, may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded (GCR 1963, 605).

9. SAME—OPINION—EXPERT WITNESS.

Testimony of expert witnesses in the form of opinions or inferences otherwise admissible is not objectionable because it

embraced the ultimate issue or issues to be decided by the trier of facts (GCR 1963, 605).

10. SAME — OPINION — NONEXPERT WITNESS — SPEED — NEGLIGENCE — SKID MARKS.

A nonexpert witness in an auto negligence case should not be allowed to give his opinion, based solely on tire or skid marks made by the tires of the car in question, as to the speed at which it was being operated at the time of the accident.

11. SAME—OPINION—SPEED OF VEHICLE—SKID MARKS—EXPERT WITNESS.

A witness qualified as an expert may give his opinion, based upon the length of skid marks, as to the speed of a motor vehicle involved in an accident.

12. AUTOMOBILES—OPINION—SPEED—SKID MARKS—EXPERT WITNESS.

Opinion testimony of expert witness as to speed of plaintiff's vehicle in negligence case deduced from the physical facts of the case, make and weight of car, skid marks, road surface, damage to the car, and photographs *held*, properly admitted as the testimony was within that area of knowledge in which the average juror would be unschooled and unexperienced.

13. APPEAL AND ERROR—INSTRUCTIONS—COURT RULE—OBJECTIONS—SAVING QUESTIONS FOR REVIEW.

A party may not complain of an instruction unless he had indicated the specific ground of objection, stating specifically the matter to which the party objects and the ground of his objection (GCR 1963, 516.2).

14. AUTOMOBILES—INSTRUCTIONS—SAVING QUESTION FOR REVIEW—CONTRIBUTORY NEGLIGENCE.

Instructions given in action for injuries sustained by eastbound motorist whose car collided some 14' from rear end of defendants' westbound left-turning 47' tractor-trailer combination that had not quite cleared eastbound lanes of 7-lane highway as it entered premises of gasoline station at 4:30 a.m. *held*, without prejudicial error, no specific objections thereto having been made to defendants' requests to charge relative to plaintiff's lack of rest and consumption of alcoholic beverages bearing upon plaintiff's contributory negligence.

Appeal from Saginaw; O'Neill (James E.), J. Submitted Division 2 March 4, 1966, at Lansing. (Docket No. 308.) Decided July 26, 1966.

Declaration by Donald Kenneth Snyder against New York Central Transport Company, a foreign corporation, Stanley Elden Wentworth and Walter Pronyk for injuries sustained in automobile collision. Judgment for defendants. Motion for new trial denied. Plaintiff appeals. Affirmed.

*Robert R. Day* and *Martin & Martin (Walter Martin,* of counsel), for plaintiff.

*Stanton, Taylor, McGraw & Collison (John W. McGraw,* of counsel), for defendants.

HOLBROOK, J. This is an automobile negligence case, tried in the circuit court for Saginaw county before a jury in October and November, 1963, resulting in a verdict for defendants of no cause for action. At the close of the proofs the trial judge directed a verdict in favor of defendant Walter Pronyk, of no cause for action.

Plaintiff's motion for a new trial was denied August 21, 1964. Plaintiff has appealed and raises three questions:

"1. Did the trial court err in allowing defendants to call a collision reconstruction expert as an expert witness and use test photographs as exhibits upon trial after the defendants upon pretrial indicated they did not intend to use any expert witness or additional exhibits?  *  *  *

"2. Had an adequate foundation been laid to permit an expert opinion on the speed of the plaintiff's car?  *  *  *

"3. Did the trial court err in its instructions to the jury?"

The pertinent facts appear to be as follows:

The accident involved an automobile operated by the plaintiff, and a tractor-trailer outfit, 47 feet in

length, owned by defendant company, and operated by defendant Stanley Elden Wentworth, and occurred on November 28, 1959, a clear night, at about 4:28 a.m., with the pavement comparatively dry. The vehicles were proceeding in opposite directions on West Genesee street also formerly known as US-10, in the city of Saginaw, Michigan. Genesee street had seven lanes for traffic: three lanes on the north side of the yellow line, for westerly bound traffic, and four lanes on the south side for easterly bound traffic. The tractor-trailer was proceeding in a westerly direction on Genesee street when its driver stopped, and looked for approaching traffic and then made a left hand turn into the driveway of the Monarch gasoline station on the south side of the street. While in the process of negotiating this turn, when defendant's tractor had crossed all of the eastbound lanes, *i.e.,* those lanes south of the yellow line, and all of his trailer had likewise crossed these lanes with the exception of the last 14 feet thereof, plaintiff driving a 1958 Chevrolet and proceeding in an easterly direction, collided with the back part of the trailer, just ahead of the rear axle of defendant's vehicle.

Persons using the highway had a clear view at the scene in both directions for several blocks, because of the public and business lights present in that immediate area.

The plaintiff and his two passengers riding with him in the front seat, received serious head injuries when the iron beam forming the outer bottom edge of the trailer was struck by the windshield of plaintiff's automobile. The defendant driver did not realize a collision had occurred until he found it impossible to complete his turn into the gasoline station because of something jammed under the rear part of his trailer.

Plaintiff-appellant testified that the lights from the tractor-trailer suddenly flashed across his path of travel when he was about three car lengths, or 50 feet away; that he slammed on his brakes and the collision occurred. He also testified that he was traveling at 25 miles per hour, which was the legal rate of speed for that location. He further testified that earlier in the evening he had been at the home of a friend, with other college students and each had drunk about two mixed whiskey drinks.

Plaintiff's vehicle left 44 feet of skid marks up to the point of impact. Plaintiff's exhibits 3 through 10 were photographs taken from varying positions of the scene shortly after the accident, showing the trailer and the automobile, before being moved. The plaintiff's automobile was extensively damaged as shown in the exhibits.

The plaintiff claims in relation to his first question raised on this appeal, that the trial judge erred in allowing defendant to call an expert witness to testify as to the speed of plaintiff's automobile from the physical facts shown by the testimony produced at the trial. The plaintiff asserts as fact the admission of test photographs of defendants as exhibits. The only photographs introduced in evidence were plaintiff's numbered 3 through 10. No photographs of defendants were admitted.

Plaintiff asserts that defendants should have informed the court of their intention to call the expert witness at pretrial and to have given plaintiff such expert's name in the list of witnesses to be exchanged as agreed between the parties at the pretrial hearing. It is true defendants did not indicate an intention to use such expert witness in the pretrial hearing but did, however, give a list of the known witnesses they intended to call in accord with the pretrial order. Subsequently they contacted Dr. Thomas Manos, an expert at the University of Detroit, and

then decided to have him testify. They notified plaintiff's counsel of their intention of calling Dr. Manos as a witness some three months and 12 days prior to the trial date. It is also true that defendants, in such notification, did not inform plaintiff on what subject the expert would testify, but neither did plaintiff inquire, submit interrogatories, or request permission from the court to take a deposition of Dr. Manos.

The trial judge permitted defendants to call Dr. Manos as a witness. The learned trial judge, in passing on this phase of the motion for new trial, stated:

"Plaintiff was apprised of defendant's intention to use the expert witness complained about long before the time of trial, although after the time set in the pretrial order. However, it seems that the court did not abuse its discretion in permitting the witness to testify, especially in view of the state of our law relative to the so-called 'work product of the lawyer'. See note at bottom of page 413, in *Wilson v. Saginaw Circuit Judge* (1963), 370 Mich 404."

The pretrial order, in any event, could only apply to witnesses known at the time of furnishing their names as agreed. Defendants informed plaintiff of the expert's name as soon as it was determined he would be a witness and in sufficient time so that plaintiff could have prepared to meet his testimony, no matter what it might have been.

GCR 1963, 301, the pretrial conference rule, provides for consideration of limiting the number of expert witnesses and whether the parties wish to agree to the appointment of an impartial expert. The pretrial statement did not contain any reference to limiting the number of expert witnesses. The plaintiff, although required by the pretrial statement to file a list of the names of witnesses he intended

to use at the trial within three weeks of July 23, 1962, did not furnish such list until after an order requiring same March 26, 1963. Defendants gave notice to plaintiff of the additional witness July 9, 1963. Under the circumstances, the trial judge did not abuse his discretion in allowing defendants to call this expert witness.

Appellant's second question raises the issue of whether an adequate foundation had been laid to allow Dr. Manos to give an opinion on the speed of plaintiff's car.

The testimony disclosed that Dr. Thomas Manos, was a professor of mechanical engineering in the undergraduate and graduate school of the University of Detroit for the immediate preceding four years. His educational accomplishments included a bachelor of science degree in aeronautical engineering and mathematics, a master of science and engineering mechanics, and a doctorate in mechanical engineering from the University of Michigan, and a master of science and mechanical engineering degree from Wayne State University. He was a registered engineer in the State of Michigan. Previous to his professorship at the University of Detroit, he taught at Wayne State University for five years and for seven years taught automotive engineering at the Henry Ford Community College. He was also a director of the Transport Research Institute, which studied the various safety factors of automobiles, conducted experiments of taking vehicles out and colliding them with each other under various conditions, then comparing results with anticipated results from studies made prior to the experiments. He had extensively experimented with many vehicles as to skidding properties, speed, and damage resulting to vehicles by reason of collision under varying conditions. For four years he worked as principal engineer with the Ford Motor Car Company and

directed analytical research at that time in the crash safety program. His background indicated considerable actual experience concerning the expert areas upon which he testified in this case. Such experience, together with his educational training, without question, qualified Dr. Manos as an expert in his field.

In giving his opinion on the speed of plaintiff's vehicle, he was informed of the following factors testified to by witnesses at the scene: 44 feet of skid marks made by plaintiff's vehicle, the make and weight of plaintiff's automobile, the composition of the pavement (bituminous), that it was a cold clear night and the pavement described as dry, or slightly moist with dew; photographs of the scene and the damage to plaintiff's automobile caused by the collision plainly showing. From these factors and applying his specialized scientific knowledge and experience, he gave his opinion that plaintiff was traveling a minimum of 40 miles per hour just before the accident. To the question of speed assuming no impact or that plaintiff stopped within the 44 feet of skid marks without being stopped by running into an object, Dr. Manos estimated the minimum speed of plaintiff's car to be 32½ miles per hour. It was obvious that plaintiff's car did not stop of its own volition for it was still traveling forward at the point of impact.

The rule governing testimony of expert witnesses in Michigan is GCR 1963, 605. A recent Supreme Court decision, *Dudek* v. *Popp* (1964), 373 Mich 300, interprets the application of the rule. Mr. Justice O'HARA, writing for the Court, stated on pp 305–307, as follows:

"In view of the expanding areas in which opinion evidence is being received by courts, we believe a brief review of principles is indicated. In the law of

evidence, 'opinion' is an inference or conclusion drawn by a witness from facts. Under ordinary circumstances a witness is to be restricted to facts within his personal knowledge, and his opinion or conclusion with respect to matters in issue, or relevant to the issue, may not be received in evidence. (See 32 CJS, Evidence, § 438, p 70.)[1] The danger involved in receiving the opinion of a witness is that the jury may substitute such opinion for their own. Accordingly, where all the relevant facts can be introduced in evidence and the jury are competent to draw a reasonable inference therefrom, opinion evidence will not be received. When the conclusion to be drawn from the facts depends on professional or scientific knowledge or skill, the conclusion may be stated. (32 CJS, Evidence, § 446, pp 74, 75.)[2]

"Our question here resolves itself into 2 subdivisions. First, is the subject matter about which Officer May testified within that area of esoteric knowledge in which the average juror would be unschooled and unexperienced? Secondly, is Officer May the possessor of that measure of skill and special knowledge which would qualify him to testify opinionatively?

"Much has been written upon this general topic in both case law and legal publications. If any trend be ascertainable, it is in the direction of the relaxation of the rule, both as to the subject matter of expertise and in the qualifications necessary to enjoy expert status. Even popular news weeklies have recognized the current re-examination of the question by courts. (See Time, March 20, 1964, The Law.)

"Historically, opinion evidence as to cause and effect in areas of ordinary human experience has been barred, on the reasonable assumption that such determination is attainable by the jurors themselves.

---

[1] In the 1964 revision of 32 CJS, Evidence, § 438 is found at pp 50–54.—REPORTER.

[2] In the 1964 revision of 32 CJS, Evidence § 446 is found at pp 59–67.—REPORTER.

We note, however, a definitive trend toward the acceptance of police officers with extensive experience in accident investigations as 'experts' and in consequence the allowance (within limits) of their opinion evidence. These opinions have included the point of impact (*Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal App 2d 716 [232 P2d 572]), braking and stopping distances (*Kerr* v. *Caraway* [Fla], 78 So 2d 571).

"We align ourselves with the authorities which hold that one properly qualified in accident investigative background may testify either from personal observation or from properly authenticated and admitted exhibits that, in his opinion, certain marks are skid marks and that they were made by a given motor vehicle and his reasons therefor. On the same basis and for the same reasons, he may point out in his opinion the point of impact.

"Our former Court Rule No 37, § 16 (present GCR 1963, 605), is reflective of this trend and we make it applicable to the question here presented:

" 'Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires. The witness may state his opinion and reasons therefor without first specifying data on which it is based, but upon cross-examination, he may be required to specify such data. The judge, in his discretion, may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded. Testimony of expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact.'

"The precise point urged by appellee—that of opinion admitted went to the ultimate fact issue involved— is covered by this rule. The evidence was properly received."

In the treatise 23 ALR2d annotated, Evidence—
Tire Tracks or Marks, Admissibility in civil cases,
pp 136, 141, it is stated in part as follows:

"A nonexpert witness should not be allowed to
give his opinion, based solely on tire or skid marks
made by the tires of the car in question, as to the
speed at which it was being operated at the time of
the accident."

"A witness qualified as an expert may give his
opinion, based upon the length of skid marks, as to
the speed of a motor vehicle involved in an accident."

Also, see 32 CJS, Evidence, § 546, pp 259–263.

The opinion testimony of Dr. Manos as to the
speed of plaintiff's automobile deduced from the
physical facts in the case, was within that area of
knowledge in which the average juror would be un-
schooled and unexperienced. Having previously de-
termined that Dr. Manos possessed the skill and
special knowledge to qualify him to testify opiniona-
tively, we conclude that this evidence was properly
received. Also, see *In re Powers Estate,* 375 Mich
150, 172; 18 ALR2d 287, 23 ALR2d 112.

The third and last question raised by appellant,
asserts claimed error in trial judge's instructions.
We find that appellant's counsel placed the follow-
ing objection on the record in chambers, prior to
argument, to wit:

"*By Mr. Martin:* May the record show I am ob-
jecting to that part of the defendants' asserted claim
pertaining to lack of proper rest and having pre-
viously consumed alcoholic beverages and bearing
upon the alleged contributory negligence of the
plaintiff. I object to instruction 5, I object to in-
struction 7. I object to the requested instruction
entitled 'lights'. It isn't numbered, but that is the
way it is entitled. I object to the paragraphs under

'lights'; and each requested charge to be found on lighting, as filed by the defendants. You understand, Miss Browne, all these objections apply to the defendant's requests. (Directed to court reporter.)

*"By court reporter:* Yes."

After the instructions were given by the trial judge, both counsel, in answer to the question by the court, "Is there anything further, gentlemen?" replied to the effect that they had nothing further.

Appellee claims that appellant failed to follow the required rules of procedure and the case law interpreting these rules to save error, if any in fact was committed, for appellate review.

The applicable rule, GCR 1963, 516.2, is as follows:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

We find in the treatise, 6 Callaghan's Michigan Pleading and Practice, under § 38.133, at page 174, the following:

"Under the court rule (GCR 1963, 516.2), a party may not complain of an instruction unless he has indicated the specific ground of objection, or made a specific request for modification of the instruction given. An objection to the giving or failure to give an instruction must be specific, stating specifically the matter to which the party objects and the ground of his objection."

As to the former practice, see former Court Rule No 37 § 9 (1945), and the following cases: *Gilson* v.

*Bronkhorst* (1958), 353 Mich 148; *Baker* v. *Saginaw City Lines, Inc.* (1962), 366 Mich 180, 189; *Reetz* v. *Rigg* (1962), 367 Mich 35; *Taylor* v. *Lowe* (1964), 372 Mich 282; *Smith* v. *Musgrove* (1964), 372 Mich 329; *Sarazin* v. *Johnson Creamery, Inc.* (1964), 372 Mich 358, 363; *Hill* v. *Harbor Steel & Supply Corp.* (1965), 374 Mich 194, 206.

The trial judge gave all of the instructions requested by plaintiff. The objections of plaintiff to the requests of defendants should have specified the objectionable matter therein, and the grounds therefor. Had he done so, the trial judge might have modified the language of the instructions given. The plaintiff having failed to follow the court rule, the claimed error is not saved for review. In reading the entire charge, we do not find prejudicial error.

Judgment affirmed. Costs to appellee.

McGREGOR, P. J., and QUINN, J., concurred.