## ANDERSON v. LIPPES

1. AUTOMOBILES—NEGLIGENCE—EVIDENCE—EXPERT WITNESS—QUALIFICATIONS—DISCRETION.

Whether a witness is qualified as an expert is left to the discretion of the trial court, and its decision is to be interfered with only where an abuse of discretion is demonstrated.

2. AUTOMOBILES—NEGLIGENCE—EVIDENCE—EXPERT WITNESS—QUALIFICATIONS.

Trial court determination that plaintiffs' witness was an expert properly qualified to estimate the speed of defendant's automobile in an accident from data presented to him and photographs of the automobile taken after the accident *held,* proper where the witness had been an engineer since 1920, had degrees in electrical and mechanical engineering with postgraduate work in civil engineering, had been employed as a traffic engineer, had written articles regarding the effects of collisions on motor vehicles, and had made a study of the damage done to automobiles in accidents where the speed was known.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence § 25.
[2–4] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 984, 990, 992.
[5] 29 Am Jur 2d, Evidence § 785 *et seq.*
[6] 29 Am Jur 2d, Evidence § 786.
[7, 8] 29 Am Jur 2d, Evidence § 787.
[9, 10, 12] 8 Am Jur 2d, Automobiles and Highway Traffic § 488.
[11] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 507, 513, 514.
[13] 8 Am Jur 2d, Automobiles and Highway Traffic § 940.

3. AUTOMOBILES—NEGLIGENCE—EVIDENCE—SPEED OF AUTOMOBILE—
   EXPERT WITNESS—CONDITIONS AFTER ACCIDENT.
   The opinion testimony of an expert witness as to the speed de-
   fendant's automobile was traveling when it was involved in
   an accident is admissible even though based solely upon con-
   ditions existing after the accident, under proper factual cir-
   cumstances.

4. AUTOMOBILES — NEGLIGENCE — EVIDENCE — EXPERT TESTIMONY
   — SPEED OF DEFENDANT'S AUTOMOBILE — BASIS FOR DETERMINA-
   TION.
   Trial court's allowing of plaintiffs' expert witness to give an
   estimate, based upon an examination of physical evidence after
   the accident occurred, of the speed defendant's automobile was
   traveling at the time of the accident in question was proper
   where the expert was aware of the type of automobile involved,
   its weight, the distance the automobile traveled off the road
   before colliding with a pole, the manner in which the automo-
   bile collided with the pole, the additional distance the automo-
   bile traveled after the collision with the pole, and had observed
   several photographs of the damaged vehicle, and where he
   admitted that there was an error factor.

5. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY—DISCRETION.
   A determination of the admissibility of photographs as evidence
   is for the sound discretion of the trial court.

6. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.
   Photographs must, in order to be properly admitted as evidence,
   be accurate and have probative value and must be helpful in
   throwing light upon some material point in issue.

7. EVIDENCE — ADMISSIBILITY — PHOTOGRAPHS — VALUE — PREJU-
   DICIAL EFFECT.
   A photograph may be admitted in evidence if its value as evi-
   dence outweighs its possible prejudicial effect, or it may be ex-
   cluded if its prejudicial effect may well outweigh its value as
   evidence.

8. EVIDENCE — ADMISSIBILITY — PHOTOGRAPHS — ACCIDENT VICTIM
   —PREJUDICIAL EFFECT — PROBATIVE VALUE.
   Trial court's admission in evidence of a photograph of the face
   of an automobile accident victim, taken in the emergency room
   of a hospital, depicting the victim's face covered with blood
   and a mass of small and large jagged lacerations, with the
   nose smashed and almost completely torn from its position,

was not an abuse of discretion, since the photograph's preju-
dicial effect, if any, was outweighed by its probative value in
informing the jury of the extent and nature of the victim's
injuries and in explaining the corrective treatment necessitated.

9. AUTOMOBILES—NEGLIGENCE—GUEST PASSENGER—WILLFUL AND
WANTON MISCONDUCT—ELEMENTS.

A person who is the guest in the automobile of another must, in
order to recover damages from the driver of the automobile
resulting from an accident, show that the driver was guilty of
gross negligence or willful and wanton misconduct, that is,
that the driver had knowledge of a situation requiring the ex-
ercise of ordinary care and diligence to avert injury to an-
other, that he had the ability to avoid the resulting harm by
the use of ordinary care and diligence in the use of the means
at hand, and that he omitted to use care and diligence to avert
the threatened danger, when to the ordinary mind it would be
apparent that the result would be likely to prove disastrous to
another (CLS 1961, § 257.401).

10. AUTOMOBILES—NEGLIGENCE—GUEST PASSENGER—WILLFUL AND
WANTON MISCONDUCT—JURY QUESTION.

Whether or not defendant automobile driver was guilty of will-
ful and wanton misconduct is a question to be answered by the
jury in doubtful cases.

11. AUTOMOBILES—NEGLIGENCE—GUEST PASSENGER—WILLFUL AND
WANTON MISCONDUCT—EVIDENCE.

Evidence that defendant driver traveled 60 to 65 miles per hour
in a 45 mile per hour zone on his way to a picnic, driving
around curves at excessive speed and at one time momentarily
losing control of his car, that at the picnic he consumed some
wine, that he exceeded the speed limit on the return trip, and
that he failed to observe signs which indicated a sharp left
curve in the road and which required a decrease in speed to
30 miles per hour *held*, sufficient to establish defendant's viola-
tion of the statutory duty of care to his guest passenger (CLS
1961, § 257.401).

12. AUTOMOBILES—NEGLIGENCE—GUEST PASSENGER—WILLFUL AND
WANTON MISCONDUCT—EVIDENCE—RELEVANCE—STATE OF MIND.

The scope of relevant testimony necessary to establish the "sum
total" of a defendant's actions is broad and includes evidence
tending to establish his state of mind in a case where willful
and wanton misconduct is an issue.

13. AUTOMOBILES—NEGLIGENCE—GUEST PASSENGER—WILLFUL AND WANTON MISCONDUCT—EVIDENCE—SCOPE OF TESTIMONY.

Evidence consisting of testimony concerning defendant driver's manner of driving on the way to a picnic, where an accident occurred on the return trip after the picnic, *held*, properly admitted to reflect defendant driver's state of mind on the return trip in an action by an automobile guest passenger injured in the accident (CLS 1961, § 257.401).

Appeal from Washtenaw, James R. Breakey, Jr., J. Submitted Division 2 May 9, 1969, at Lansing. (Docket No. 6,130.) Decided June 26, 1969. Leave to appeal granted February 10, 1970. See 383 Mich 765.

Complaint by Jacqueline Anderson, by her next friend, Velma P. Anderson, and by Kenneth Anderson against Richard James Lippes and Thomas Lippes for damages resulting from injuries to Jacqueline Anderson in an automobile accident. Verdict and judgment for plaintiffs. Defendants appeal. Affirmed.

*DeVine & DeVine*, for plaintiffs.

*Burke, Burke, Ryan & Rennell*, for defendants.

Before: LESINSKI, C. J., and QUINN and DANHOF, JJ.

LESINSKI, C. J. This is an automobile negligence case in which plaintiff Jacqueline Anderson asserted that defendant Richard Lippes was guilty of wilful and wanton misconduct and sought damages for injuries received while a guest in an automobile driven by him. The injury occurred when the automobile driven by defendant failed to negotiate a curve, left the road, began to roll over, struck a utility pole, then righted itself and eventually

stopped in a field. After a jury trial in Washtenaw county circuit court, plaintiffs were granted a verdict of $79,200. Defendants appeal.

Defendants first contend the trial court erred in admitting into evidence the opinion testimony of plaintiffs' expert as to the speed of Richard Lippes' automobile at the time of the accident. Defendants contest both the expert's qualifications and the basis for the expert's opinion, in contending that prejudicial error occurred.

In determining the admissibility of opinion testimony of a witness, the question of whether the witness is qualified as an expert is left for the discretion of the trial judge, and his decision is to be interfered with only where an abuse of discretion is demonstrated. *Coles* v. *Galloway* (1967), 7 Mich App 93. In the instant case, testimony indicated that the witness was a consulting engineer, had been an engineer since 1920, had degrees in electrical and mechanical engineering with postgraduate work in civil engineering, had been employed as a traffic engineer in various large municipalities, had written articles regarding the visibility of traffic signs and the effects of collisions on motor vehicles, had previously given expert opinions regarding the causes of accidents and had made a study of the damage done to automobiles in accidents where the speed was known. Based upon this background, the trial court found the witness qualified as an expert. We agree. The trial court did not abuse its discretion in determining that the witness was sufficiently qualified to be interrogated as an expert in the instant case.

Defendants further attack the admissibility of the expert's opinion testimony, claiming there was insufficient foundation for the expert's conclusion that Richard Lippes' automobile was traveling at

least 55 miles per hour at the time of the accident. Our research discloses that court decisions are divided regarding the admissibility of expert or opinion evidence as to speed based upon the appearance or condition of a motor vehicle after an accident, it often being impossible to determine whether court rejection of testimony occurs as a matter of principle, or because of the facts of the particular case. See 93 ALR2d 287 and Supplement. However, in Michigan the Supreme Court stated in *Dudek* v. *Popp* (1964), 373 Mich 300, 307:

"We align ourselves with the authorities which hold that one properly qualified in accident investigative background may testify either from personal observation or *from properly authenticated and admitted exhibits* that, in his opinion, certain marks are skid marks and that they were made by a given motor vehicle and his reasons therefor. On the same basis and for the same reasons, *he may point out in his opinion the point of impact.*" (Emphasis supplied.)[1]

Similarly, this Court in *Snyder* v. *New York Central Transport Company* (1966), 4 Mich App 38, held that an expert may give his opinion, based upon the length of skid marks, as to the speed of a motor vehicle involved in an accident. Michigan courts, therefore, have adopted the principle that under proper factual circumstances, an expert's opinion testimony as to speed is admissible although based solely upon conditions existing after the accident.

In the instant case, a review of the transcript indicates that plaintiffs' expert was aware of the type of automobile involved, its weight, the distance the automobile traveled off the road before colliding with a pole, the manner in which the auto-

---

[1] See, also, *LaFave* v. *Kroger Co.* (1966), 5 Mich App 446.

mobile collided with the pole, the additional distance the automobile traveled after collision with the pole, and had observed five photographs of the damaged vehicle. While the expert estimated that Richard Lippes was traveling at least 55 miles per hour, he admitted an error factor of one to five miles per hour by reason of each of nine factors. The defendant himself admitted driving up to 50 miles per hour, although the posted speed limit on the road was 45 miles per hour, and the posted speed limit for the curve on which the accident occurred was 30 miles per hour. Based upon these particular facts, we cannot conclude that reversible error was committed in the admission of the expert's conclusion as to the speed of Richard Lippes' automobile. Even if the testimony should not have been admitted, its consideration by the jury was not prejudicial because both the defendant's and the expert's estimates of defendant's speed were in excess of the speed limit on the road and because defendant's admission of traveling 50 miles per hour was a close approximation of the speed estimated by plaintiffs' expert. See *Maul* v. *Filimon* (Mo App, 1958), 315 SW2d 859.

Defendants next contend that the trial court erred in admitting into evidence a photograph of the injuries to plaintiff's face which was taken immediately after plaintiff arrived at the hospital following the accident. The admitted photograph was one of various photographs offered into evidence by plaintiff in order to assist her plastic surgeon in showing the extent of plaintiff's facial injuries and in explaining the corrective treatment employed. Defendants objected to the admission of any of these photographs, claiming that they were highly prejudicial and inflammatory. Over this objection, the trial court admitted one photograph

and permitted the plastic surgeon to testify while projecting the photograph upon a screen in the courtroom. It is to the admission of this one photograph that defendants object.

This Court has recently considered the propriety of the admission of photographs into evidence in *People* v. *Turner* (1969), 17 Mich App 123; *People* v. *Brannon* (1968), 14 Mich App 690; and *People* v. *Rogers* (1968), 14 Mich App 207.[2] In each of these cases this Court recognized that the admissibility of photographs is for the sound discretion of the trial court. Concededly the photographs must be accurate and have probative value. Moreover, these three cases have acknowledged the applicability of the test provided in *People* v. *Becker* (1942), 300 Mich 562, that the photograph, to be admissible, must be helpful in throwing light upon some material point in issue.

In application of these tests to the instant case, one issue before the court was the extent of the injuries and the amount of pain and suffering caused to plaintiff. Another issue concerned recovery for the medical expenses incurred in treating plaintiff for her injuries. Both of these issues required a detailed explanation in order that a jury might properly assess the amount of damages to be awarded plaintiff. The photograph was necessary for a proper description of the injuries and of the treatment employed by the plastic surgeon. Therefore, the photograph in the instant case did throw light upon material issues of fact, and had probative value. Since the defendants

---

[2] The standards for admissibility of photographs in civil and criminal cases are similar. See *People* v. *Brannon* (1968), 14 Mich App 690, 692, 693, citing both criminal and civil decisions in indicating the standard of admissibility of photographs. See, also, *Perri* v. *Tassie* (1940), 293 Mich 464.

admitted the accuracy of the photograph, no issue of accuracy is involved in this appeal.

In *People* v. *Jenkins* (1968), 10 Mich App 257, 264, this Court recognized that:

"A photograph may be admitted if its value as evidence outweighs its possible prejudicial effect, or may be excluded if its prejudicial effect may well outweigh its probative value."

Similarly, in *Turner, supra,* we stated that:

"Photographic evidence relevant to a material point in issue may, nevertheless, be inadmissible if its possible prejudicial effect outweighs its probative value."

In considering defendants' claim that the admitted photograph is inflammatory, we have closely examined the exhibit to determine whether it was prejudicial in nature. The exhibit admittedly is gruesome, depicting as it does the plaintiff's face covered with blood and a mass of small and large and jagged lacerations, her nose smashed and almost completely torn from its position. However, we do not feel the trial court erred in exercising his discretion to admit the exhibit. We are not convinced that the photograph's prejudicial effect, if any, outweighed its probative value in informing the jury of the extent and nature of plaintiff's injuries and in explaining the corrective treatment necessitated.

Defendants' third contention is that the evidence taken in the light most favorable to plaintiff was insufficient to support a verdict of wilful and wanton misconduct. Under Michigan's guest passenger statute, CLS 1961, § 257.401 (Stat Ann 1968 Rev § 9.2101):

"No person, transported by the owner or operator of a motor vehicle as his guest without pay-

ment for such transportation shall have a cause
of action for damages against such owner or opera-
tor for injury, death or loss, in case of accident,
unless such accident shall have been caused by gross
negligence or wilful and wanton misconduct of the
owner or operator."

The elements constituting gross negligence or
wilful and wanton misconduct have been definitively
set forth by the Michigan Supreme Court in *Tien*
v. *Barkel* (1958), 351 Mich 276, 281, 282, as fol-
lows:

" '(1) Knowledge of a situation requiring the
exercise of ordinary care and diligence to avert
injury to another; (2) ability to avoid the resulting
harm by ordinary care and diligence in the use of
the means at hand; (3) the omission to use such
care and diligence to avert the threatened danger,
when to the ordinary mind it must be apparent
that the result is likely to prove disastrous to an-
other.' "

The *Tien* Court recognized that each guest pas-
senger case is *sui generis* in its factual circum-
stances and that Michigan decisions are " 'so
numerous and in some instances so irreconcilable
with other decisions that it would serve no pur-
pose to here set forth in detail each one for the
purpose of distinguishing or following it.' " There-
fore, the *Tien* Court concluded that it had "arrived
at the point of 'enlarging that area in which the
question of the existence of gross negligence or
wilful and wanton misconduct becomes a matter
for the jury' ", so that "the doubtful case in each
instance calls for jury instruction and jury verdict
rather than a verdict by order of the court."

Regarding the factual circumstances necessary
to establish liability under the guest statute, Jus-

tice TALBOT SMITH stated in *Stevens* v. *Stevens*
(1959), 355 Mich 363:

"[Liability] is normally imposed not alone be-
cause a host driver violates warnings, not alone
because he speeds, not alone because he is inatten-
tive to traffic or the rules of the road. It is im-
posed because the conduct, usually made up of the
sum total of these factors, manifests a high degree
of danger, a manifest probability that harm will
result therefrom, and an utter disregard of the
probable consequences."

See, also, *Prentkiewicz* v. *Karp* (1965), 375 Mich
367.

In the instant case the record, when viewed in a
light most favorable to plaintiffs, indicates that the
defendant driver called for plaintiff, his date, on
Friday about 8 p.m., October 15, 1965, for the pur-
pose of going on a picnic. At that time defendant
stated he intended to "rally" on the way to the
picnic, "rallying" being defined by plaintiff as "a
certain increase in speed, curves were involved,
rather than brake you downshift, he downshifted
going into the curve and then you accelerate as you
come out of the curve." As part of the prepicnic
"rallying", testimony indicates that defendant would
travel at a speed of 60 to 65 miles per hour, would
attempt to take curves as fast as he could without
losing control, and would accelerate out of the
curves. In addition, plaintiff testified that on route
to the picnic site she told defendant he was "ill
advised" when he attempted to pass in a no pass-
ing zone, and that on one occasion defendant
momentarily lost control when his car swerved and
skidded.

Upon reaching the picnic site, defendant driver
consumed some wine and half a loaf of bread over
a two-hour period. At the end of the third hour,

defendant driver and plaintiff commenced the return drive, plaintiff falling asleep on the trip.

Defendant admitted driving at speeds from 45 to 50 miles per hour at the time of the accident. Some evidence indicated an even higher speed. He drove at night on a road which he knew from his outward trip to be winding and to contain sharp curves. The jury could have found that although eight reflectorized signs in the four miles prior to the accident limited speed to 45 miles per hour, defendant driver deliberately exceeded the posted speed limit. Moreover, there was sufficient evidence for the jury to find that defendant observed a sign which indicated a sharp left curve and which required a decrease in speed to 30 miles per hour, yet deliberately intended to round the curve at a speed of at least 20 m.p.h. over the 30 m.p.h. limit as part of another deliberate attempt to take curves as fast as possible without losing control and without using brakes. Indeed, defendant indicated the high speed at which he entered the curve when he admitted that he did not recall applying his brakes on that curve because he feared that if he did he would skid out of control. The jury could have found from the evidence that defendant deliberately traveled too fast on the curve and lost control of his automobile, causing the automobile to travel off the road approximately 105 feet while careening on its right two wheels until the top of the automobile struck a utility pole, whereupon the automobile righted itself and traveled another 75 feet. As was stated by the trial judge:

"Here there is established sufficiently for the jury to find a coldly calculated choice by the defendant of an unusual, unorthodox manner of driving, with-

out regard to his own safety or that of his passenger."

Upon the sum total of the factors in this case, we agree with the trial judge that the evidence was sufficient to establish defendant driver's violation of the statutory duty of care.

Defendants' final contention on appeal is that the trial court committed error in admitting into evidence testimony regarding defendant driver's manner of driving on the outbound portion of the trip to the picnic site in order to show the manner of driving and the attitude of defendant driver at the time of the accident.

Concededly, if prior conduct is too remote in time or place, testimony as to such prior conduct will be inadmissible to prove the cause of an accident. However, in a case where gross negligence or wilful and wanton misconduct are at issue, the scope of relevant testimony necessary to ascertain the "sum total" of a defendant's actions is broad and includes evidence tending to establish a defendant's state of mind. Thus, *Cramer* v. *Dye* (1950), 328 Mich 370, 376, stated:

" 'In determining whether or not a host motorist was guilty of wilful and wanton misconduct, the jury could properly consider his reckless state of mind and also *his persistently reckless course of conduct during the trip from its commencement to the point of the accident.'* " (Emphasis supplied.)

In *Cramer,* the Michigan Supreme Court considered the following facts in determining that the issue whether the host motorist was guilty of wilful and wanton misconduct should have been submitted to the jury:

"Defendant had 2 passengers with him in front seat and plaintiff and 2 other minors in rear seat, drove 45 miles an hour rolling his passengers from

side to side in the car, nearly struck 2 mailboxes, entered a through highway without stopping, drove thereupon on both sides of the highway, failed to stop at a 2-way intersection stop street, drove on wrong side of highway barely escaping a head-on crash, stopped at a tavern bar for 45 minutes over protests of passengers, thereafter drove 50 to 55 miles per hour and barely missed another collision, failed to heed a passenger's protests, was halted 15 minutes by a freight train and subsequently collided with diesel railroad engine after passing around a waiting city bus notwithstanding crossing flasher lights and engine lights were operating and bell was ringing, saying that 'this is one train we're not going to wait for'." *Cramer* v. *Dye* (1950), (syllabus 2), 328 Mich 370, 371.

*Cramer* clearly recognized that even when an event such as a 45-minute stop at a tavern intervenes between the beginning portion of a trip and the concluding portion which ends in an accident, the conduct occurring during the beginning portion of the trip is admissible for the purpose of establishing the state of mind of the defendant during the remainder of the trip. See, also, *Prentkiewicz, supra; Peyton* v. *Delnay* (1957), 348 Mich 238; *Rogers* v. *Merritt* (1943), 307 Mich 459. Similarly, in the instant case we concur in the trial court holding that defendant driver's conduct before the picnic is admissible to reflect defendant driver's state of mind on the return trip and especially immediately before the accident. Defendant's admission that on the return trip he chose to drive from 45 to 50 miles per hour indicates that defendant driver persistently pursued his prior course of conduct on the return trip. As such, the prior conduct was not inadmissible as too remote in time or place from the accident.

Affirmed. Costs to plaintiffs.

All concurred.