## NORTH v TROWBRIDGE

1. TRIAL—MOTIONS—JUDGMENT NOTWITHSTANDING VERDICT—DIRECT-
ED VERDICT—COURT RULES.

Trial judge could properly consider defendants' motion for judg-
ment notwithstanding the verdict, even though the defendants
had failed to move for a directed verdict at the close of all
the evidence, where the defendants had moved for a directed
verdict at the close of the plaintiffs' proofs, the court had
taken the motion under advisement, had informed the de-
fendants that they could renew their motion after the jury
had returned a verdict, plaintiffs did not at that time com-
plain of the judge's stated position, neither the parties nor
the judge was aware of the court rule governing a judgment
notwithstanding the verdict, and they were proceeding under
a misunderstanding of the rule's contents because under the
circumstances it would be unjust to hold the defendants to the
strict requirements of the rule (GCR 1963, 515.2).

2. AUTOMOBILES—GROSS NEGLIGENCE.

Negligence involves a state of mind of the driver; thus, gross
negligence is necessarily a matter of inference from the facts
in each case.

3. AUTOMOBILES—GROSS NEGLIGENCE—DIRECTED VERDICT.

All the facts leading up to the accident complained of must
be considered in determining whether, on a motion for a di-
rected verdict, gross negligence has been shown; each case is
*sui generis* in its factual circumstances.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Judgments § 120.
[2] 7 Am Jur 2d, Automobiles and Highway Traffic § 265.
8 Am Jur 2d, Automobiles and Highway Traffic § 906.
[3] 53 Am Jur, Trial § 332 *et seq.*
47 Am Jur 2d, Judgments § 106 *et seq.*
[4] 8 Am Jur 2d, Automobiles and Highway Traffic § 778 *et seq.*
[5, 6] 8 Am Jur 2d, Automobiles and Highway Traffic § 817.

4. AUTOMOBILES—GROSS NEGLIGENCE—PRIMA FACIE CASE—DIRECTED
   VERDICT.

   Gross negligence was not shown where the evidence, viewed
   most favorably to plaintiff, showed that the defendant was
   driving at 25 to 30 miles an hour on a main highway during
   a snowstorm, the defendant became aware of a county road
   truck 1/4 of a mile from the truck, defendant observed the
   truck from 250 feet away, believed the truck to be moving, and
   intended to pass it, the plaintiff, defendant's passenger, tes-
   tified that she saw nothing to alarm her, but did think she
   saw a red light 100 yards away, and the defendant collided
   with the truck.

5. AUTOMOBILES—COUNTIES—ROAD COMMISSION—DISABLED VEHICLES
   —STATUTES.

   Vehicles of a county road commission, when disabled, are not
   exempt from statutory safety requirements (MCLA 257.713).

6. AUTOMOBILES—NEGLIGENCE—PRIMA FACIE CASE.

   Sufficient evidence existed to support a jury finding that de-
   fendant road commission proximately caused the injuries of
   plaintiff, a passenger in a car, where the plaintiff's driver saw
   the flashing light of the road commission's truck 1/4 mile
   away and the outline of the truck at 250 feet, the driver
   was driving at 25 to 30 miles per hour on a main highway
   in a snowstorm, the driver testified that he thought the truck
   was moving and that he could pass it, the truck was disabled
   and stopped either on the highway or the highway's shoulder,
   no flares had been put up to warn drivers of the truck's
   presence, and plaintiff's claim was based on the failure of
   the truck's presence to be marked by flares.

Appeal from Lapeer, Norman A. Baguley, J.
Submitted Division 2 January 12, 1972, at Detroit.
(Docket No. 9512.)  Decided February 28, 1972.

Complaint by Cathy North, by her next friend,
Mary North, against John W. Trowbridge and the
Lapeer County Road Commission for personal in-
juries arising from an automobile-truck collision.
Verdict and judgment for plaintiff. Defendant
Trowbridge's motion for judgment notwithstanding
the verdict granted. Defendant road commission
appeals. Affirmed.

*William J. Drillock,* for plaintiff.

*McIntosh, Oppliger, Mugan & Huegli,* for defendant Trowbridge.

*Richard J. Bahls,* for defendant road commission.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and VAN VALKENBURG,* JJ.

PER CURIAM. The trial judge handed down the following opinion in this cause:

"This matter was tried before a jury on January 27, 1970. At the close of plaintiff's proofs, each defendant moved for a directed verdict. The court took the motions for directed verdict under advisement and the defendants entered their proofs. The case was submitted to the jury which returned a verdict against both defendants in the amount of $25,000 in favor of plaintiff. Each defendant has moved for a verdict notwithstanding the judgment or in the alternative a new trial.

"Findings of Facts

"On November 2, 1966 plaintiff was a passenger in an automobile driven by defendant Trowbridge along Highway M–90 in Lapeer County. At the time, a heavy snow storm was in progress and the truck of the defendant Lapeer County Road Commission, hereinafter called defendant commission, was being utilized to scrape the snow off the shoulder of the highway. The truck was being driven by one Elmer Gardner. The engine of the truck began to malfunction and the truck was stopped for the purpose of making a determination of the cause of the difficulty. There was testimony both that the truck was stopped on the shoulder and that it was stopped upon the highway.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"The Trowbridge vehicle was proceeding at 25 to 30 miles an hour in the same direction as the truck had been moving. As defendant Trowbridge reached a point approximately 1/4 mile from the truck, he saw the flashing yellow light located on the truck. About 250 feet from the truck he could make out the outline of the truck and he stated that it looked like it was plowing snow. He testified that he believed that the truck was moving at that time and he pulled out to see if any traffic was coming from the opposite direction in order to determine whether he could pass safely. Thereafter, he remembers nothing of the accident.

"Gardner testified that he was stopped about 10 minutes before the accident and was looking under the hood of the truck when he saw the Trowbridge vehicle approach and drive into the rear of the truck. At that time, there were variable winds and visibility was very limited and variable. The plaintiff testified that she saw one little red light about 100 yards away and believed it to be a car. She did not see the accident develop.

"There were no flares set out behind the truck to warn vehicles of its presence while it was stopped. The defendant commission admitted that there were no flares in the truck which could have been used.

"The plaintiff received extensive facial injuries as a result of her head going through the windshield and back into the vehicle. The plaintiff suffered extensive lacerations resulting in obvious scars. Some plastic surgery has been accomplished and she will be subjected to further surgery in the future. The plaintiff was 14 years of age at the time of the accident. The medical testimony indicated that further treatment would reduce the scar tissue but would not eliminate it.     .

"Conclusions

"May the defendants move for verdicts notwithstanding the judgment after having moved for directed verdicts at the close of the plaintiff's proofs but not at the close of all of the proofs?

"At the close of plaintiff's proofs, each defendant moved for a directed verdict. Defendant Trowbridge claims that the plaintiff had not presented evidence of gross negligence or wilful and wanton misconduct on the part of the defendant Trowbridge and further alleges that the pleadings of defendant Trowbridge did not set forth sufficient facts to establish either gross negligence or wilful and wanton misconduct. Defendant commission alleges that there was no negligence shown on the part of its truck because the defendant was exempted from the provisions of the Motor Vehicle Code requiring the placing of flares to warn of a stopped vehicle.

"After arguments were made in support of and in opposition to the motions for directed verdict, the court announced that it would take the matters under advisement and that the defendants could renew their motions subsequently. Michigan General Court Rule 515.2 provides:

" 'Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the moving party may move not later than 20 days after the entry of judgment to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict * * * If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.'

"Plaintiff contends that the failure of the defendants to move for directed verdict at the close of all the evidence precludes them from now moving for verdict notwithstanding the judgment [sic].

"Defendants argue that it was sufficient for them to move for directed verdict at the close of the plaintiff's proofs. Strict application of Rule 515.2 would deny defendants the relief they seek. However, the court is aware that it indicated to defendants that they could renew their motion after the verdict was

returned by the jury. Plaintiff did not complain of this position at the time it was stated by the court. Certainly neither the trial court nor the parties were then aware of the provisions of the rule and were proceeding under a misunderstanding of these provisions. It would be grossly unjust to hold the defendants to the strict requirements of Rule 515.2 under these circumstances. This situation is analogous to those which arose prior to the adoption of the 1963 rules wherein the Supreme Court exercised its discretion in granting judgment notwithstanding the verdict absent a motion for directed verdict during the trial although such motion was required, it appearing that no different result could be expected upon a new trial. *Antisdel* v *Canfield,* 119 Mich 229 (1899); *Wadhams* v *Western Assurance Co,* 117 Mich 514 (1898). It certainly appears in this case that no different result could be expected upon a new trial of this case. The court therefore determines that defendants' motions for judgment notwithstanding the verdict may be considered by the trial court.

"Is defendant Trowbridge entitled to a judgment notwithstanding the verdict?

"Defendant Trowbridge sets forth two grounds for a directed verdict. At the close of plaintiff's proofs, he alleged that the pleadings were defective for failure to state facts constituting gross negligence. He claims that such motion is properly made at the close of plaintiff's proofs and cites in support thereof *Quinlan* v *Wells,* 291 Mich 214 (1939). In that case a motion for directed verdict was made based upon claimed defects in the pleadings of the plaintiff. The court notes however that that case does not establish when the motion for directed verdict was made. It appears to have been brought on some time during the course of the trial.

"Michigan General Court Rules 116 and 117 provide for pretrial motions to settle the law suit upon the pleadings. We are not here concerned with the application of accelerated judgment under Rule 116.

Rule 117 may be used to determine whether there exists any dispute as to law or fact in the case. It is a proper motion upon which to attack the pleadings and the defendants here had the opportunity to stress the sufficiency of plaintiff's complaint by such a motion. They did not do so.

"Defendant Trowbridge also had the privilege of moving for directed verdict at the completion of the opening statement of plaintiff. *Crawford* v *Palomar,* 7 Mich App 21 (1967). It has long been established that upon a motion for directed verdict, the court must view the evidence in the light most favorable to the party opposing the motion. *State Automobile Mutual Insurance Co* v *Ropp,* 7 Mich App 698 (1967); *Dora* v *Kroger Co,* 1 Mich App 286 (1965). This court concludes that once the evidence has been received, the court must consider it in ruling upon a motion for directed verdict and cannot at that point consider only the pleadings. Therefore, although the court is inclined to agree with defendant Trowbridge that the pleadings of plaintiff do not set forth sufficient facts to properly show gross negligence or wilful and wanton misconduct on the part of defendant Trowbridge, but merely recite conclusions, the motion for directed verdict could not and will not be granted on that basis.

"The more difficult question concerns the issue of whether there was sufficient evidence at the close of plaintiff's proofs to establish a case of gross negligence or wanton and wilful misconduct sufficiently strong to be presented to the jury. The court has no difficulty in determining that there was no evidence in the record of wilful and wanton misconduct. The question of gross negligence is the more difficult one. In considering this, the court does view the proofs presented by the plaintiff in a light most favorable to that party.

"The elements constituting gross negligence or wilful and wanton misconduct have been defined in *Tien* v *Barkel,* 351 Mich 276 (1958), as:

" '(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another;

" '(2) Ability to avoid the resulting harm by ordinary care and diligence [in] the use of the means at hand;

" '(3) The omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.'

"This test has further been expanded and delineated in *Stevens* v *Stevens,* 355 Mich 363 (1959):

" '[Liability] is normally imposed not alone because a host driver violates warnings, not alone because he speeds, not alone because he is inattentive to traffic or the rules of the road. It is imposed because the conduct, usually made up of the sum total of these factors, manifests a high degree of danger, a manifest probability that harm will result therefrom, and an utter disregard of the probable consequences.' The latter interpretation of gross negligence completely removes any misapprehension that the *Tien* definition leaves little distinction between ordinary negligence and gross negligence. Gross negligence involves a state of mind of the driver. *Karney* v *Upton,* 353 Mich 262 (1958); *Turner* v *Cotham,* 361 Mich 198 (1960). This is necessarily a matter of inference from the facts in each case. *Prentkiewicz* v *Karp,* 375 Mich 367 (1965). Thus, all of the facts leading up to the collision must be considered in determining whether the case of gross negligence has been made out. Each case involving gross negligence is *sui generis* in its factual circumstances and that *Tien* case has 'arrived at the point of "enlarging that area in which the question of existence of gross negligence or wilful and wanton misconduct becomes a matter of [for] the jury." ' *Anderson* v *Lippes,* 18 Mich App 281, 290 (1969).

"Plaintiff's evidence in this case can be considered to have established that defendant Trowbridge, driv-

ing at 25 to 30 miles an hour along a main highway in a snow storm, was made aware of the road commission truck at a distance of approximately 1/4 of a mile by the flashing yellow light. He also observed the truck itself at a distance of about 250 feet. At that time, he believed the truck to be moving and he had every intention of passing the truck. The plaintiff testified that she saw nothing which would give cause for alarm although she did see a red light about 100 yards away and believed it to be a car. The only action of defendant Trowbridge in approaching the truck, that he recalls, was pulling out to see if any traffic was coming, taking his foot off of the gas pedal, and placing it on the brake pedal. In considering the circumstances existing and leading up to the collision, the court recognizes that there is sufficient evidence to determine that defendant Trowbridge was guilty of ordinary negligence and that this was the proximate cause of the accident. But there is no evidence in the record from which an inference could properly be drawn that this defendant was possessed of a state of mind making him guilty of gross negligence or wilful and wanton misconduct. By no stretch of the imagination can this court conclude that reasonable men would differ on this issue. In no way did defendant's conduct manifest a high degree of danger, a manifest probability that harm would result therefrom, and an utter disregard of the probable consequences. Plaintiff's own testimony negates such a conclusion.

"The court has read many of the cases concerning gross negligence including all of those cited by counsel. The facts in this case in no way approach the extreme fact situations in any of the cases examined. Defendant was driving at a slow speed, was not under any strain, mental or physical, was not warned of any dangerous situation relating to his driving, and was not under any adverse influences. The reason that he collided with the truck was not disclosed but the evidence affords inferences only of, at the most, ordinary negligence on his part. The

motion for directed verdict by defendant Trowbridge should have been granted.

"Was there sufficient evidence to establish an issue of negligence on the part of the defendant commission and of proximate cause between any such negligence and the injuries sustained by the plaintiff?

"Defendant commission moved for directed verdict at the close of plaintiff's proofs alleging that there was no evidence of negligence on the part of such defendant. Defendant commission relies upon MCLA 257.603(e); MSA 9.2303(e) which specifically exempts vehicles engaged in work upon the surface of the highway from the provisions of chapter 6 of the Michigan Vehicle Code. The court concluded during the trial that defendant commission was exempted from the provisions of MCLA 257.713; MSA 9.2413 on the basis that the defendant's truck was actually engaged in work upon the surface of a highway. This was an erroneous conclusion by the court. At the time of the accident and immediately preceding it, the truck was not engaged in such work. In addition, the court concludes that the Legislature did not intend that the vehicles of the road commission, when disabled, could ignore the safety requirements of the statute. Although the defendant commission was upheld on this point, no harm was done because the jury was instructed that it could find the defendant negligent for its failure to exercise ordinary care to warn other vehicles on the highway that it had stopped. The jury having found negligence on the part of defendant commission, neither party was harmed.

"Defendant commission further contends that there was not sufficient evidence of proximate cause to support the jury's verdict. Defendant argues that the defendant driver Trowbridge was able to observe the flashing yellow light of the truck at 1/4 mile and the outline of the truck at 250 feet and that he therefore had sufficient notice of the presence of the stopped truck to warn him of the hazard. In

viewing the evidence in a light most favorable to the plaintiff, the court must consider the testimony of defendant Trowbridge that he thought the truck was moving when he saw it and did not realize that it was stopped upon the road. This is not the same case as *Cothran* v *Cleenewerck & Son*, 235 Mich 351 (1926), where the testimony of the driver of the automobile indicated that he attempted to pass a stopped truck and then had to hit the truck in order to avoid a collision with an oncoming car. That was a situation where the driver clearly placed himself in a hazardous situation and to avoid the consequences deliberately drove his car into the truck. We do not have such a clear-cut sequence of events in the principal case.

"In *Lindenfeld* v [*Michigan*] *Interstate Truck Co*, 274 Mich 681, 684 (1936), the Court stated:

" 'There was no evidence that the absence of flares had any causal connection with the collision. Nor did the [sic] plaintiff claim the fact of whether the truck was stalled or moving had any effect upon his conduct.'

"This does not correspond to the claims of the plaintiff in the instant case. Although there may have been one or more other proximate causes of the accident, there can be more than one proximate cause, and the question here is whether or not the negligence of defendant commission was a proximate cause of the accident. *Tracy* v *Rublein*, 342 Mich 623, 630 (1955). The jury was properly instructed on proximate cause and was entitled to consider the question.

"Was the award of damages by the jury excessive?

"Defendant road commission alleges that the verdict in the amount of $25,000 was excessive. The court has considered the nature of the injuries to the plaintiff, including the reasonable possibility of permanent scarring, the pain and suffering endured by the plaintiff and to be endured during future surgery, the humiliation and embarrassment

which she claims to have suffered, and the resulting effects upon her normal activities. The jury was properly instructed as to manner of determining damages in this case and under the circumstances the court does not find such damages to be excessive.

"Decision

"Based upon the foregoing the court makes the following rulings on the motions of the defendants:

"1. Defendant Trowbridge's motion for directed verdict, taken under advisement, and motion for judgment notwithstanding the verdict are granted and the verdict is set aside as to defendant Trowbridge.

"2. The motions of defendant Lapeer County Road Commission for directed verdict and for judgment notwithstanding the verdict and new trial are denied and the judgment against defendant Lapeer County Road Commission stands."

We adopt the above opinion as our own and affirm.

Affirmed. Costs to appellees.