96 So.2d 315

**James H. HUGULEY**

v.

**STATE.**

**4 Div. 322.**

Court of Appeals of Alabama.

March 26, 1957.

Rehearing Denied April 30, 1957.

Smith & Smith and W. R. Belcher, Phenix City, for appellant.

John Patterson, Atty. Gen., and J. Noel Baker, Asst. Atty. Gen., for the State.

CATES, Judge.

James Huguley, indicted for first degree manslaughter, was, upon conviction of second degree manslaughter by a jury in the Russell Circuit Court, sentenced to six months' hard labor with a fine of $500, whence he appeals.

About or shortly after sundown November 28, 1953, Huguley was driving west on U.S. Highway 80 some two and a half miles beyond Phenix City, Alabama. The car ahead of him (going west) turned right into a private driveway, made a complete loop, and came back into the highway to go back in the opposite direction. The evidence is in dispute as to its stopping before entering U.S. 80.

Huguley's car ran into this car, his front end striking the left rear door of the other automobile. Mr. Thomas H. Dobbs, a passenger in the latter, was mortally injured. The time of day not being shown of record, the speed limit we take to have been either 50 or 60 miles per hour, § 1, Act No. 22, Acts 1953, Code 1940, Title 36, § 5(1), Suppl.

The evidence for the State was that the collision occurred on a level stretch of road, slightly curved, with visibility from the point of impact back along the direction of Huguley's travel for about 600 yards. A highway patrolman testified that, in his opinion, Huguley's speed was roughly 80 miles per hour. This opinion rested on two factors, skid marks running 111 feet, and the amount of "damage" to each vehicle. There was also testimony that Huguley had been drinking—(undisputedly two bottles of beer about three o'clock in the afternoon).

The evidence for the defendant was that his speed was approximately 50 or 60 miles an hour, and that Mrs. Dobbs, the driver

of the car in which her husband was riding, had failed to stop as she came out of the private driveway onto the highway. Moreover, her entry was with such suddenness that, although he would otherwise have had his car under control, it was impossible (because of her not heeding his presence) for him to prevent the collision.

Mr. G. C. Boutwell, a Highway Patrolman, who arrived on the scene shortly after the crash, i. e., about 7:15, P.M., testified as to the location of the vehicles upon his arrival, the skid marks of Huguley's car, where the cars came together (as shown from the ending of the skid marks and the location of loosened debris and ·mud), the sight distance eastward from the driveway; that there was a slight curve more than 400 feet away from the collision; that the entire front of Huguley's car had borne the force of the collision; and that the greatest damage to the Dobbs's car was at the left rear door. Upon cross examination, he was asked to give an opinion on how far it takes to "stop an automobile after the brakes are applied that is running 50 miles per hour?" In answer, he stated that he was not familiar with the table of stopping distances set up by the National Safety Council. He stated his own personal experience on the distance of stopping a patrol car going 50 miles per hour.

The witness was then taken back on direct examination by the State and the following occurred:

"Q. Do you have an opinion based on what you observed out there as to the speed of the Huguley car?

"*Mr. Smith:* I object to that and move to exclude it on the grounds that it is incompetent, irrelevant and illegal and immaterial * * *.

"*The Court:* I will let him state if he knows. (Exception by Mr. Smith.)

"Q. On this date in November, 1953, how long had you been with the Alabama Highway Patrol at that time? A. About 17 months.

"Q. And during that time, sir, had you observed automobiles, driven them and investigated accidents of this type? A. Yes.

"Q. How long at that time had you been driving an automobile? A. About ten years.

"Q. About ten years? A. Yes.

"Q. Based on your experience in driving automobiles and observing them and seeing and investigating accidents, would you have an opinion as to the speed—based on that and from you observed at the scene—would you have an opinion as to the speed of the Huguley car prior to the time the skid marks started?

"*Mr. Smith:* We object to that and move to exclude it on the ground that it's incompetent, irrelevant and immaterial and on the further ground that the proper predicate has not been laid for the introduction of this witness.

"*The Court:* I will overrule your objection. (Exception by Mr. Smith.)

"A. Taking into consideration the length of the skid marks and the amount of damage done on each vehicle at the time of the impact, I estimated the speed roughly to be 80 miles per hour.

"Q. Roughly 80 miles per hour? A. Yes."

█ This latter objection should have been sustained and the error was prejudicial. A necessary ingredient of the opinion given was the force of impact which, in turn, depended in part on Huguley's speed at the time of collision. For this the predicate was insufficient.

Assuming arguendo the witness was properly qualified, Boutwell had not shown that he had observed, or had hypothesized to him, sufficient data of a quality such that he could give a scientific opinion as to

Huguley's speed. The following quotations from textbook and decision illustrate what appears to be the guiding general legal principle where the expert, though not an eyewitness, has observed phenomena which affect his opinion:

Wigmore on Evidence, 3d Ed., § 1927:

"(1) When an expert witness, testifying from personal observation, gives his opinion as testimony, it is usually necessary to predicate in express terms, *hypothetically,* the data upon which the opinion is based. The reason is that otherwise the jury would be unable to tell whether his opinion was meant by him to be applied to the facts ultimately found by the jury. * * *"

Blakeney v. Alabama Power Co., 222 Ala. 394, 397, 133 So. 16, 18:

"The general rule is declared that, where expert opinion is called for based upon his own knowledge of the facts, the witness should first state the facts, then his opinion or conclusion. If not on his knowledge, then the question should be hypothetical, based on facts in evidence. * * *"

▇ A nonobserver may testify as to the speed of an automobile on the basis of skid marks; and, if, where there has been a collision, *the object hit offers little or no resistance,* as a boy on a bicycle, Jackson v. Vaughn, 204 Ala. 543, 86 So. 469; see also 9 Blashfield, Automobiles (Perm.Ed.), § 6238. We see nothing in Johnson v. Battles, 255 Ala. 624, 52 So.2d 702, which extends the Jackson case beyond its own facts. Also we conceive the objection in Jackson went to the qualifications of the witness and not to the hypothesis. The evidence of an impact may go to the jury without evaluation. Alabama Great Southern R. Co. v. Molette, 207 Ala. 624, 93 So. 644. Yet, as stated in Conrad, Modern Trial Evidence, § 681, courts have been quite reluctant in automobile collisions to allow expert evidence as to speed deduced from

impact. See Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633; Stephanofsky v. Hill, 136 Conn. 379, 71 A.2d 560; Tyndall v. Harvey C. Hines Co., 226 N.C. 620, 39 S.E.2d 828; Nelson v. Hedin, 184 Iowa 657, 169 N.W. 37; Montgomery v. Hyatt, 46 Wash.2d 468, 282 P.2d 277.

Williams v. Roche Undertaking Co., 255 Ala. 56, 49 So.2d 902, involved a collision in a cemetery between Williams' car and appellee's hearse; judgment for appellee affirmed. The court held it was not error to exclude testimony of two nonobservers as to the speed of the hearse at the time of impact, based upon the physical condition of Williams' car after the collision. The opinion quotes from 133 A.L.R. p. 726, as to the majority of decisions rejecting expert evidence of speed based on the appearance or condition of vehicles after an accident.

The above being civil cases, many from jurisdictions with the scintilla rule, their persuasive force is all the more cogent for reversal in a criminal case. In State v. Lingman, 97 Utah 180, 91 P.2d 457, the court approved, by way of dictum, the testimony, in an automobile manslaughter case, of the head of the Department of Mechanical Engineering of the University of Utah, who had been teaching some forty odd years in a field including the law of impacts, as to his opinion of the speed of two colliding vehicles. This opinion responded to a hypothetical question which posed factors such as the weights of the cars, type of highway, position of cars, point of impact, the coefficient of friction of the pavement, the coefficient of restitution (the amount of bounce or recoil), and the marks made by the car which was struck as it skidded sideways.

Another criminal appeal touching a nonobserver's opinion as to the speed of an automobile was Wallace v. State, 143 Tex. Cr. 596, 160 S.W.2d 256, wherein a highway patrolman's testimony as to his opinion of speed was held to have rested on facts too

vague to support more than a conjecture. See note at 23 A.L.R.2d 153. The light and shadows of the Lingman and Wallace cases furnish, by contrast, illustrations whereunder the rule above mentioned from Williams v. Roche Undertaking Co., supra, is good and sufficient authority for the decision herein.

The judgment below is reversed and remanded for new trial in conformity herewith.

Reversed and remanded.