259 So.2d 804

## John A. MASLANKOWSKI

v.

## Sue C. BEAM, a minor, who sues by and through her mother and next friend, Barbara F. Quernemeon.

### 3 Div. 466.

Supreme Court of Alabama.

March 30, 1972.

Ball, Ball & Matthews, Montgomery, for appellant.

Richard H. Gill, and Frank W. Riggs, III, Montgomery, for appellee.

HEFLIN, Chief Justice.

This is an action for personal injuries alleged to have been sustained by Sue Beam (appellee-plaintiff) as a result of a collision between an automobile driven by her and an automobile driven by John Maslankowski (appellant-defendant) at the intersection of the Southern Bypass and the Troy Highway (which becomes McGehee Road when it crosses the Southern Bypass) in Montgomery County, Alabama.

The complaint as originally filed and amended alleged simple negligence in Count I and wantonness in Count II. At the conclusion of the evidence the case was submitted to the jury on both counts, and the jury returned a verdict in the amount of $125,000 for the appellee.

On November 5, 1969, appellant-defendant left his place of employment, Montgomery Aviation, in route home around two o'clock in the afternoon. The exact time he left work is in dispute. Appellant-defendant testified in his deposition that he left work about 2:05 p. m. During the trial he first testified that he departed a minute or two after two o'clock. Later he said he did not know exactly what time he left work, but it was "1:55, 2:05, somewhere in that area". Police records reflected that the Montgomery Police Department was notified of the accident at 2:14 p. m. The collision occurred at an intersection 9.7 miles from Montgomery Aviation. At the point of impact the speed limit was 45 m. p. h.

Appellant-defendant, driving a 1966 Chevelle Super Sport, took his customary route home. He turned off the Mobile Highway onto the Southern Bypass heading in an easterly direction. As appellant-defendant approached the intersection of the Troy Highway, he was traveling in the north (left) lane of the two eastbound lanes a considerable distance behind a Holsum Bakery bread truck driven by Billy Franklyn Wallace. At this point the Southern Bypass is a four-lane road; the two eastbound lanes are separated from the two westbound lanes by a grass median. Approaching from the west two road signs warn motorists of the Troy Highway intersection. The first reads "Intersection Slow", and the second, located nearer the intersection, reads "Intersection Signal Ahead". As the bread truck made a left turn onto McGehee Road, the appellant accelerated and proceeded to enter the intersection. Upon entering the intersection the appellant struck appellee's Corvair as she attempted to turn left across the eastbound lanes onto the Troy Highway. The traffic light was green as appellant approached the intersection and there was no left turn arrow located on either side of the light. The weather was clear and dry. The point of impact was identified by a police officer as being 15 feet from the south curb of the Southern Bypass and 6 feet east of the west curb of the Troy Highway.

The force of impact displaced the appellee's vehicle approximately 75 feet, causing it to turn around. It came to rest against a curb facing in a westerly direction. The appellant's vehicle came to rest approximately 60 feet from the point of impact also facing in a westerly direction. A witness (Preston Williams) testified he heard the crash and felt a "sensation" from it and that the windows in a building 75 to 100 yards from the point of collision were jarred. No skid marks were left by either vehicle. Appellee suffered very severe and permanent injuries, including brain damage. She testified she was unable to recall anything about the accident.

Dispute exists as to the speed of the appellant's vehicle at the time of the accident. Appellant testified that he was traveling 40 to 45 miles per hour immediately before the accident. Plaintiff's evidence would tend to indicate appellant was travel-

ing at a higher rate of speed. There is also considerable controversy as to when appellant first saw appellee's vehicle turning left across the eastbound lanes of the Southern Bypass. Appellant's testimony at trial indicated that appellant first saw the appellee turning left when he was at the edge of the median approximately 30 feet from the point of impact. The investigating police officer testified that immediately following the collision the appellant pointed out the location of his automobile when he first saw the appellee's automobile turning left. This location was approximately 150 feet from the point of collision.

The pre-trial deposition of Mr. Maslankowski (appellant) revealed that from the time he first saw Miss Beam's automobile until he saw she was not going to stop, he estimated that 15 seconds had elapsed. However, on checking the secondhand of the watch, he revised this estimate to 5 seconds. At his admitted speed of 40 to 45 miles per hour, using the 5-second interval as a basis, the jury could have determined that the appellant saw the appellee coming into the intersection 293 to 330 feet prior to the collision. There was evidence that the squeal of brakes and the sound of the impact occurred almost simultaneously.

Police investigator McCracken testified the right front tire of the automobile of John Maslankowski was blown and the bumper was sticking into the tire; the left fender was dented against the left tire, and in his opinion, the front wheels would not roll. This police officer also recited that the drive shaft of the appellant's car was bent.

The appellant contends that the trial court erred in giving the following charges:

"Plaintiff's Requested Charge No. 3:

"The court charges the jury that contributory negligence on the part of Sue Beam which will bar recovery by the plaintiff must be such that it caused the injury to Sue Beam or proximately contributed thereto, and even though you find from the evidence that Sue Beam was guilty of contributory negligence, if such contributory negligence was merely the cause of a condition, upon which negligence of the defendant in failing to use the means within his power to avoid the injury, after becoming aware of the peril of Sue Beam, operated as the sole, proximate cause of the injury to Sue Beam, such contributory negligence on the part of Sue Beam, if you find that there was such contributory negligence, will not prevent a recovery.

"Plaintiff's Requested Charge No. 4:

"I charge you Gentlemen of the jury that under the Rules of the Road enacted by the Legislature of Alabama, any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb, or property of any person. I further charge you that if you are reasonably satisfied from the evidence that the defendant in this case violated this rule of the road, then that is negligence as a matter of law. And if you are reasonably satisfied from the evidence that the plaintiff was not guilty of contributory negligence which proximately contributed to the accident, then your verdict should be for the plaintiff, Sue Beam."

"Plaintiff's Requested Charge No. 6:

"I charge you that if Sue Beam's peril was discovered in time to avoid the injury by the exercise of due care on the part of the defendant, and her injury was the proximate result of his failure to perform his duty in this respect, Sue Beam would be entitled to recover, even if you shall believe from the evi-

dence that Sue Beam may have been guilty of culpable negligence in the first instance."

"Plaintiff's Requested Charge No. 10:

"I charge you that you may infer knowledge of danger on the part of the defendant if you are reasonably satisfied from the evidence that under the circumstances and conditions at the time and place of this accident, the defendant was aware that his driving created a hazard of harm to others, from which injury was likely to result, whether or not the defendant testifies himself that he was aware of the danger."

In Faulkner v. Gilchrist, 225 Ala. 391, 143 So. 803 (1932) the circuit court gave the following charge which is very similar to plaintiff's requested charge no. 3 in the instant case:

"'3. The Court charges the jury that contributory negligence on the part of plaintiff's intestate which will bar recovery by the plaintiff must be such that it caused the injury and death of plaintiff's intestate or proximately contributed thereto, and even though you find from the evidence that the plaintiff's intestate was guilty of contributory negligence, if such contributory negligence was merely the cause of a condition upon which negligence of the defendant in failing to use the means within his power to avoid the injury, after becoming aware of the peril of plaintiff's intestate, operated as the sole, proximate cause of the injury and death of plaintiff's intestate, such contributory negligence on the part of plaintiff's intestate, if you find that there was such contributory negligence, will not prevent a recovery.'"

This Court, in *Faulkner*, Id. at 394, 143 So. at 805, said the following in approving that charge:

"Appellant insists reversible error was committed in giving for plaintiff charges 1, 2, and 3. It is argued that charge 3 assumes defendant's negligence, which was a jury question (White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 So. 479), and likewise assumes the peril of plaintiff's intestate and defendant's knowledge thereof. 45 Corpus Juris 713. But we are not in accord with this interpretation of the charge. It was addressed to the question of contributory negligence and its effect on plaintiff's right of recovery. It stated an abstract proposition of law without applying it to the facts (Karpeles v. City Ice Co., 198 Ala. 449, 73 So. 642; Anthony v. Seed, 146 Ala. 193, 40 So. 577; Branson's Instructions to Juries [2d Ed.] p. 25), and the word 'if' in the charge serves to qualify all that follows."

When considering a charge almost identical to charge no. 3 in the instant case and to charge no. 3 in *Faulkner*, supra, this Court in Johnson v. McNear, 255 Ala. 457, 52 So.2d 154 (1951), held that the giving of that charge was error. However, in Johnson v. Martin, 255 Ala. 600, 52 So.2d 688, a later companion case to *McNear*, this Court held the giving of the same charge in the *McNear* case was not error.

Further, in Crocker v. Lee, 261 Ala. 439, 74 So.2d 429 (1954) this Court held that it was not error to refuse to give a charge again almost identical to charge no. 3 in the instant case. However, the Court said:

"The giving of such charge was approved in Faulkner v. Gilchrist, 225 Ala. 391, 143 So. 803. But the charge contains the words 'even though' and it has been held that it is not error to refuse such charges."

By implication this decision indicates that had such a charge been given, it would not have been reversible error under Faulkner v. Gilchrist, supra.

▮▮ In view of these later cases, the criticism of plaintiff's requested charge no. 3 is perhaps that it is abstract or misleading. The giving of an abstract or misleading charge is not of itself reversible error. Ray v. Richardson, 250 Ala. 705, 36 So.2d 89; Supreme Court Rule 45.

■ The giving of plaintiff's charge no. 4 constituted reversible error because it fails to hypothesize that the negligence relied upon for recovery proximately caused the appellee's injuries. This charge does not require the jury to find the negligence postulated (speed) proximately caused the accident or the injuries sustained by the appellee. This Court has said on several occasions that charges which omit to specify that the alleged negligence must be the proximate cause of the injury are not merely misleading and incomplete but prejudicially erroneous. Matheny v. Petersen, 276 Ala. 478, 163 So.2d 635 (1964); Mobile City Lines, Inc. v. Holman, 273 Ala. 371, 141 So.2d 180 (1962); Terry v. Nelms, 256 Ala. 291, 54 So.2d 282 (1951). For a recent discussion of the omission of "proximate cause" from a directing charge see Shepherd v. Gardner Wholesale, Inc., 288 Ala. 43, 256 So.2d 877 (1972). No useful purpose would be served by restating this discussion already stated with clarity in that opinion.

By giving plaintiff's charge no. 4, the jury was instructed that if the appellant did not drive at a reasonable and prudent speed under the circumstances, he was guilty of negligence; and such negligence was actionable if the appellee was not guilty of contributory negligence. Such a charge is not correct where an essential element, proximate cause, is omitted. Swindall v. Speigner, 283 Ala. 84, 214 So.2d 436 (1968).

Appellee contends that there can be no doubt that appellant caused the injuries suffered by the appellee. But this is not the issue. What is important in connection with plaintiff's charge no. 4 is whether appellant's *negligence* proximately caused the injuries complained of. Williams v. Wicker, 235 Ala. 348, 179 So. 250. Appellant's negligence was a major issue during the trial and was placed in sharp dispute by the evidence.

■ Plaintiff's requested charge no. 6 is in all material respects the same as the charges given at the request of the plaintiffs in Deamer v. Evans, 278 Ala. 35, 175 So.2d 466; Self v. Baker, 266 Ala. 572, 98 So.2d 10; and Gulf, M. & N. R. Co. v. Fowler, 19 Ala.App. 163, 96 So. 87. In each of these cases the court held there was no error in giving the said similar charge. In view of the court's holding in each of these cases, we are unwilling to reverse the trial court for giving of plaintiff's requested charge no. 6, even if such a charge is not a model of completeness.

■ The trial court did not commit reversible error in giving plaintiff's requested charge no. 10. The rule of law that it recites is correct. Lewis v. Zell, 279 Ala. 33, 181 So.2d 101; Thompson v. White, 274 Ala. 413, 149 So.2d 797; and Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77. Although argumentative in form, it does not constitute reversible error. Hale v. Cox, 222 Ala. 136, 131 So. 233 (1930); Mobile Cab & Baggage Co. v. Busby, 277 Ala. 292, 169 So.2d 314 (1964).

■ Appellant further complains that the trial court erred in denying his motion for new trial on the ground the verdict of the jury and the judgment of the court thereon was contrary to the great weight and preponderance of the evidence in the case. We cannot say that the jury went beyond its prerogative in returning its verdict for the appellee. The conflicting testimony of the appellant and the physical evidence presented a jury question as to whether the appellant was speeding. He became aware of the appellee's peril as she turned into the intersection (the location of his car when he became aware of such peril was in sharp conflict from his trial testimony and his deposition testimony). The jury was in a better position than this Court on appeal to evaluate the evidence, reconcile the conflicts and return a verdict. No ground of a motion for new trial is more carefully scrutinized and rigidly limited than that the verdict is contrary to the great preponderance of the evidence. Smith v. Smith, 254 Ala. 404, 48 So.2d 546. Therefore, this Court will not hold the trial court erred in refusing

to grant a motion for new trial on this ground.

█ Appellant further assigns as error the refusal of the trial court to give the affirmative charge, with and without hypothesis, for the appellant as to both counts. In reviewing the evidence where the affirmative charge has been refused appellant the evidence must be viewed in its most favorable aspect to the appellee. Mobile Press Register, Inc. v. Padgett, 285 Ala. 463, 233 So.2d 472 (1970); and other cases.

In this light the evidence was that the appellant was traveling at a speed greater than the stated limit through a crowded and dangerous intersection; that appellant had ample time to avoid the collision by applying his brakes after he saw the appellee's vehicle coming into the intersection; that appellant increased his speed prior to the time he applied his brakes; that the force of impact displaced the appellee's vehicle 75 feet; and that appellant was familiar with the intersection at the time the accident occurred.

From the evidence, and its inferences, it was not error for the trial court to submit the negligence count to the jury. Even if the jury assumed that the appellee was guilty of contributory negligence, sufficient evidence existed so the jury could infer that the appellant had actual knowledge of the perilous position of the appellee and failed to exercise the requisite due care. Since evidence of actual knowledge of the appellee's perilous position is in the record, this Court does not think Brooks v. Coxe, 285 Ala. 267, 231 So.2d 302 (1970), cited by appellant, is relevant.

█ Nor does this Court feel the lower court erred in allowing the wanton count to go before the jury. There was evidence from which the jury could have inferred that appellant was driving at an unlawful rate of speed. The appellant was familiar with the intersection and its surroundings. He was conscious of the appellee's presence in the intersection. He accelerated his speed before entering the intersection. The jury could have found that he disregarded the presence of impending danger for an unusually long period of time before applying his brakes. A question for the jury was presented on the wanton count.

In a case involving similar circumstances, Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716 (1967), Chief Justice Livingston wrote:

"There was evidence that the appellant was driving at a speed of 45 to 50 miles per hour in a business district at the time of the accident. This speeding was a conscious act on the part of the appellant which she knew, or should have known, would likely or probably result in injury. The appellant admitted knowledge of the presence of the Lawson car in the intersection. Because the appellant had this knowledge, the question was for the jury as to whether she drove her car into the Lawson car as a result of the speed she was traveling, and with knowledge of the circumstances, and with a conscious indifference to the consequences, she omitted to do that which she could and ought to have done to prevent the collision; in which event, she would be liable for wantonness. Thompson v. White, 274 Ala. 413, 149 So.2d 797. We are thus of the opinion that the refusal to give the affirmative charge for the defendant-appellant on the wanton count was not error . . . ."

Consideration of the testimony of Henry G. Robinson, who was called by the appellee as an expert to give an estimate of the speed of the appellant's vehicle at the point of impact, should be undertaken since this matter may arise on retrial.

The evidence disclosed that Mr. Robinson was a professional Accident Reconstruction Consultant, employed by Dale Medsker and Associates of Atlanta, Georgia, and had continuously investigated automobile accidents for the past ten years he had been employed with this firm. Mr. Robinson attended the University of Georgia for three years, studying mathematics

and physics. His formal education was completed at Georgia Tech evening school, where he received a degree in building construction. As part of his employment he participated in group teaching of accident investigation for Georgia State Patrol trainees. Most of his time for the past ten years had been devoted to the reconstruction of automobile accidents from physical data collected after collision. He testified he had personally conducted tests to determine stopping distances, coefficients of friction, vehicle displacements and the like, and had witnessed numerous tests of controlled accidents for damage comparison, angles of impact and other related facts. He recited that the methods which he used have been verified by mechanical checks.

In order to ascertain appellant's speed at impact Mr. Robinson's approach was to determine three components of appellant's speed: speed to do damage, speed to move appellant's vehicle after impact and speed to move appellee's vehicle after impact. His testimony pertaining to this determination was as follows. Speed to do damage was determined by comparing the condition of the vehicles involved in the accident with damage done to vehicles which have collided at known speeds and angles of impact. Speed to displace appellant's vehicle from point of impact until it came to a stop was calculated the same as the speed necessary to skid to a stop or rolling stop. Speed to displace appellee's vehicle was determined from the amount of work, translated into miles per hour, necessary to move appellee's vehicle 75 feet. These three speeds were then combined by squaring each one and adding them together. The square root was then extracted to obtain speed at impact.

On the basis of personal examination a few weeks after the collision of the vehicles involved in the accident and the intersection where the accident occurred, and certain assumed facts contained in a hypothetical question, Mr. Robinson undertook to express an opinion of the speed of the appellant's vehicle at the moment of impact. The hypothetical question assumed: (1) the accident occurred in the general vicinity of two or two thirty in the afternoon of November 5, 1969; (2) the weather was dry; (3) the two vehicles involved in the accident were a 1966 Chevrolet Chevelle Super Sport and a 1962 Corvair; (4) the driver of a vehicle which was proceeding east on the Bypass in the 1966 Chevelle weighed one hundred and fifty pounds; (5) the driver of the vehicle that was proceeding west on the Bypass and was in the process of making a left turn to go south on the Troy Highway weighed about one hundred and fifty pounds to one hundred and forty pounds and had about seventy-five to one hundred and fifty pounds of luggage in her car; (6) the point of impact was located fifteen feet from the south curb of the Southern Bypass and six feet east of the west curb of the Troy Highway; (7) no skid marks were left by either vehicle in the accident; (8) the eastbound Chevelle Super Sport came to rest sixty feet beyond the point of impact facing back in the direction from which it had come; (9) the 1962 Corvair which was involved came to rest seventy-five feet from the point of impact facing west; (10) with the exception of a small soft spot in the stopping line on the north lane of the eastbound part of the Southern Bypass, the pavement was dry and firm; and (11) the front end of the Chevelle was driven in to the extent that those wheels could not have rolled.

Mr. Robinson then testified to these physical facts of his own knowledge which were relevant in calculating appellant's speed at impact; (1) the road was in good condition and would be classified as traveled asphalt; (2) there was a slight upgrade in the road in an easterly direction; (3) the gross weight of the 1966 Chevelle Super Sport was thirty seven hundred pounds; (4) the gross weight of the 1962 Corvair was twenty-seven hundred pounds; (5) the angle of impact was somewhere in the neighborhood of forty-five degrees; and (6) the right front corner of the Chevelle struck the right

front fender over the wheel area of the Corvair.

Mr. Robinson testified that the following facts made little difference in the co-efficient of friction he used in his formulas: (1) temperature of the pavement; (2) humidity; (3) age of the pavement; (4) composition of the asphalt; (5) tire pressure; and (6) condition of the tire tread since the value of the coefficient of friction he used was favorable to the appellant.

Upon the assumed facts and the facts within his own knowledge, Mr. Robinson expressed an opinion that the speed of the appellant's vehicle at the moment of impact was fifty-five miles per hour. Over appellant's several general objections the trial court admitted this testimony.

This Court has said that an expert, not an eyewitness to the collision, can testify as to the estimated speed of an automobile predicated on the distance the tires "skidded" or were dragged along the highway before impact, Jackson v. Vaughan, 204 Ala. 543, 86 So. 469, but not predicated on the distance the tires "skidded" after impact. Jowers v. Dauphin, 273 Ala. 567, 143 So.2d 167 (1962). Skid marks before impact, the point of impact and *the damage to the vehicles* are three factors upon which an expert can validly predicate his opinion as to speed. Rosen v. Lawson, supra. However, this Court has not considered whether an expert, not an eyewitness to the collision, can testify as to the estimated speed of an automobile at impact predicated on the distances and directions traveled after impact, the damages sustained by the automobiles, the point of impact the angle of impact and numerous other combining physical facts.

The preliminary question whether Mr. Robinson had the necessary qualifications to testify as an expert was not raised by any of the parties, but since a retrial is possible, we should consider this question.

The use of expert testimony is expressly authorized by Title 7, section 437, Code of Alabama 1940, which provides:

"The opinions of experts on any question of science, skill, trade or like questions are always admissible; and such opinions may be given on the facts as proved by other witnesses."

The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse. Baggett v. Allen, 273 Ala. 164, 137 So.2d 37; Johnson v. Battles, 255 Ala. 624, 52 So.2d 702.

Generally before expert testimony is admissible it should appear the jurors themselves are incapable, for want of knowledge or experience of the subject matter, of drawing correct conclusions from the facts proved. Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. 390, 118 So.2d 727. It is obvious that the subject of Mr. Robinson's testimony was such that a jury would not be equally competent to reach a conclusion from the facts of the case.

As stated in Woyak v. Konieske, 237 Minn. 213, 54 N.W.2d 649 (1952):

"Where the opinion of a witness is elicited, the proper test to determine his qualification is whether his knowledge of the matter in relation to which his opinion is sought is such that it will probably aid the trier of the question to determine the truth."

It would appear that expert testimony in the field of physical forces, velocities and dynamics, involving laws of motion and force, probably would be of considerable assistance to the jury.

It appears that there was a sufficient quantum of scientific data available upon which a reasonably accurate opinion as to the speed of appellant's ve-

222

hicle could be formulated. Although the facts upon which this estimate was based may not have been all conclusive, there was enough data so that any estimate rendered thereon would not have been classified as speculation or a mere guess. An objection to Mr. Robinson's testimony on grounds of inadequacy of facts would go to the weight of the evidence rather than to its admissibility. Shelby County v. Baker, 269 Ala. 111, 110 So.2d 896 (1959). Of course the opinion of Mr. Robinson was not binding on the jury who was not absolutely required to accept his opinion in place of its own judgment. New York Life Ins. Co. v. Johnston, 256 F.2d 115 (5th Cir. 1958).

The appellant contends that the admissibility of Mr. Robinson's testimony is contrary to a number of cases in this state, which appellant maintains have held, in substance, that expert testimony is not permissible if such opinion evidence is based upon physical facts brought into being from the impact of the motor vehicles. The appellant cites in support of this contention Williams v. Roche Undertaking Company, 255 Ala. 56, 49 So.2d 902 (1940); Jowers v. Dauphin, 273 Ala. 567, 143 So.2d 167 (1962); Baggett v. Allen, 273 Ala. 164, 137 So.2d 37 (1962); Campbell v. Barlow, 274 Ala. 627, 150 So.2d 359 (1962); Stanley v. Hayes, 276 Ala. 532, 165 So.2d 84 (1964) and Holuska v. Moore, 286 Ala. 268, 239 So.2d 192 (1970). In addition to these cases we have also considered the case of Giles v. Gardner, 287 Ala. 166, 249 So.2d 824, which was recently decided by this Court.

In each of these cases there was no similar expert before the trial court. In practically all of these cases the expert was a law enforcement officer, usually the investigating officer. In such cases, the so-called expert testified, or offered to testify, that he had observed the physical facts around the accident and that his estimate of speed was based upon such physical facts and his experience in investigating accidents. No explanation of the

scientific methods employed, if any, were ever presented to the trial court. In each of those cases, this Court was motivated to think, since there was such a sparcity of scientific information presented, that the trial court correctly ruled such opinion testimony was inadmisible; or on the other hand, that the trial court abused its discretion in allowing such so-called expert testimony to be presented to the jury.

This Court does not interpret these cases as holding that regardless of the qualification of the expert, the scientific methods employed and the quantum of scientific data presented that, nevertheless, any such expert testimony is inadmissible as a matter of law. To so rule would indicate that this Court has engaged in a fact-finding function which appellate courts scrupulously avoid where the witnesses testify before the court and jury.

With recent technological developments in the fields of medicine, engineering, physics and mathematics we are now living in a world which has become increasingly more complex. It is important that our court system utilize sound technological advancements in judicial proceedings to bring evidence of greater certainty and exactness before the jury.

One commentator has stated:

" . . . [I]f trial by jury as a means of fixing damages and fault in automobile accident cases is to accomplish its objectives, the law must take a more enlightened outlook on the problem of the admissibility of expert opinion and other scientific objective data relating to the laws of motion." Reath, Scientific Data and Expert Opinion—Its Use in Automobile Accident Cases, 24 Ins.Coun.J. 99 (1957).

This problem was also recognized in Evidence—Admissibility of Expert Opinion Testimony in Motor Vehicle Accident Cases, 39 Miss.L.J. 317, 324 (1968) where the author wrote:

" . . . Our world is becoming increasingly complex, and inevitably more

and more subjects will fall outside the pall of common knowledge. The importance of expert opinion testimony will expand in direct proportion to the expansion of man's knowledge. If the jury system is to survive, it must continue to reach the right decision more often than not. A more enlightened attitude toward the admissibility of expert opinion testimony appears, in this light, essential to the survival of juries as such."

In the instant case, Mr. Robinson not only presented his qualifications and experience, but explained his methods in detail. For example, Mr. Robinson gave this explanation of the physical equations and theories which he used to calculate the speed necessary to move appellee's vehicle 75 feet. He explained that appellant's vehicle as it traveled would have a certain amount of energy in motion, or kinetic energy; that this kinetic energy is equal to one-half mass times velocity squared ($\frac{1}{2}mv^2$) where mass is the weight of appellant's vehicle divided by gravity; that to displace appellee's vehicle it would require a certain amount of work; that this amount of work is equal to the weight of appellee's vehicle times the distance displaced times the coefficient of friction (wdf); and, that the amount of work necessary to displace appellee's vehicle would be equivalent to the kinetic energy of appellant's vehicle. By setting $\frac{1}{2}mv^2 =$ wdf he was then able to determine one of the three components of appellant's speed at impact.

With explanation of the theories and physical laws involved, as well as a large quantum of scientific data, plus testimony of Mr. Robinson's training and experience in the field of accident reconstruction before the lower court, the trial judge allowed Mr. Robinson to give his opinion testimony. Based upon this evidence this Court does not feel that the trial judge abused his discretion in admitting the opinion testimony of Mr. Robinson.

Dr. C. J. Rehling, the State Toxicologist was called as a witness for the appellant.

While he had never conducted any tests concerning the determination of speed from the result of a collision of motor vehicles, Dr. Rehling's testimony indicated that the laws of physics and the formulas used by Mr. Robinson in calculating speed were well known and correct. Portions of Dr. Rehling's testimony follow:

"BY MR. BALL:

\* \* \* \* \* \*

"Q. Doctor, to what field of science is the question of moving bodies and the forces that they create on each other, and also the question of moving bodies creating friction? What field of science is that related to?

"A. That is an area, subdivision, of physics called mechanics.

"Q. Mechanical physics?

"A. That is correct.

"Q. Some of these laws of motion and what it takes to stop a moving body or what it takes to propel a moving body?

"A. Yes.

"Q. And the movement of a body across a surface, these are related to Newton's laws of physics, are they not?

"A. Yes.

"Q. And correlaries of them.

"A. That is correct."

\* \* \* \* \* \*

"Q. \* \* \* What are the problems in physics, mathematics, calculus, strength of materials and scientific fields that make this difficult, or what are the problems related to it?

"A. The problems in a case of automobiles is a matter of the strength and resistence of the various materials, which are functions of the kind of material as well as their shape or structure. Another, na-

turally, is the speed of the two respective vehicles, and another is their particular mode or manner of impact or contact. All of these will determine the degree and kind of injury or damage sustained by the vehicles."

\* \* \* \* \*

"BY MR. RIGGS:

"Q. Dr. Rehling, did I understand you to say that in a collision like this a certain amount of the force is used up in the impact?

"A. Yes.

"Q. And the rest of it is used in the movement of the vehicles after the impact?

"A. Right.

"Q. Part of the force used in the movement of the vehicles being displaced?

"A. Right.

"Q. And part of it used in the forward motion of the displacing vehicle after it has overcome the resistance of the displaced vehicle?

"A. Correct.

"Q. Now, there are known formulas in physics for the force that it takes for an object of a known weight to displace another object of a known weight a known distance, aren't there?

"A. That's correct.

"Q. And there are known laws in physics that tell us the force that an object of a known weight takes to overcome the resistance of another known weight and come to a stop aren't there?

"A. Yes, if you know certain other factors.

"Q. Well, we have talked here today about a whole lot more factors than Mr. Ball has mentioned to you, and I am not going to try to detail them. But it is true, isn't it, that if you know other factors you do have known laws of physics that will work out these formulas for you?

"A. That is true on the very simple experiments. Now the other factors that complicate this, and the greater the number of these other factors, why these will have to be known in order to make a calculation.

"Q. Doctor, have you ever conducted any experiments with vehicles like this?

"A. No. I have not."

\* \* \* \* \* \*

The Alabama Court of Appeals in Huguley v. State, 39 Ala.App. 104, 96 So.2d 315, cert. denied, 266 Ala. 697, 96 So.2d 319, which has been cited with approval by this Court in Baggett v. Allen, supra, and Jowers v. Dauphin, supra, held by implication that if a proper scientific predicate were laid, then expert testimony concerning speed would be admissible. Observing that there was a lack of such a predicate in that case, that court stated as follows:

" . . . Boutwell [the expert] had not shown that he had observed, or had hypothesized to him, sufficient data of a quality such that he could give a *scientific opinion* as to Huguley's speed." (Emphasis added)

In *Huguley*, for contrast, that court cited the Utah case of State v. Lingman, 97 Utah 180, 91 P.2d 457, in which a proper quantum of scientific data was avaialble to the expert. In the Utah case, the expert's opinion included such evidence as the weight of the cars, type of highway, position of cars, point of impact, the coefficient of restitution, and the marks made by the car as it skidded sideways. These factors were similar to the data considered by Mr. Robinson. In *Lingman*, the expert was a professor of mechanical engineering and was

allowed to give a scientific opinion of speed since his expertise enabled him to calculate the physical behavior of two objects colliding.

In Kettle v. Smircich, 415 S.W.2d 935 (Tex.Civ.App.1967) the expert was an accident consultant who had spent years with the Texas Department of Public Safety as a highway patrolman and as an investigator, and was also an expert on the reconstruction of accidents. He had testified frequently as a witness in the trial of such cases. Although only a high school graduate, he had taken technical courses in the military in mathematics, electronic theory and mechanics, as well as police courses. He was "able to calculate and express the kinetic energies for formulas and apply them to vehicles in motion; that as an accident consultant he goes into the field of reconstruction of accidents, the physical damage and physical evidence and the scene involved; that he applies the principles of physics and mathematics in connection with his works; . . . . that on secondary schooling in the Department he had experience with evaluating physical forces, energy, applying kinetic energy formulas, dealing with test skills, reaction time, speed, angles, marks, gouges and taking pictures; that he studied many controlled tests involving such factors; that he applied his skills to reconstruction of accidents including rotational or broadside tests where cars were rotating or spinning; . . . . that he was able to apply his knowledge of physics and kinetic energy to the physical facts that are available . . . .." On voir dire it was shown that the witness did not have a college degree in physics or mathematics, that most of his experience was practical. However, the Texas court said that the decision on the qualifications of an expert was "a preliminary question to be determined by the trial judge." and "In the decision of this question our courts had wisely held that the trial judge has a wide discretion not subject to review in the absence of clear abuse." The Texas court then held that the trial

court did not abuse its discretion in permitting the expert to give his opinion as to how an accident happened and the location of the point of impact. For other cases with similar holdings, see Snyder v. New York Cent. Transport Co., 4 Mich.App. 38, 143 N.W.2d 791; Billingsley v. Southern Pacific Co., 400 S.W.2d 789 (Tex.Civ. App.1966); Groninger & King, Inc. v. T. I. M. E. Freight, Inc., Okl., 384 P.2d 39.

In this opinion we have previously stated that Dr. Rehling's testimony indicated Mr. Robinson's scientific approach was sound, however, we do not want to be misunderstood as inferring that the testimony of Mr. Robinson and Dr. Rehling contained no differences. In fact, there were marked differences but this Court feels that these differences go to the weight of the testimony. Objections to expert testimony on the grounds of inadequate or incorrect facts would go to the weight of the evidence rather than the admissibility. Shelby County v. Baker, supra. In connection with the order of presentation of witnesses, the opinion testimony of Mr. Robinson had been presented to the jury before Dr. Rehling testified, so naturally his testimony was directed toward the weight to be given by the jury to Mr. Robinson's testimony rather than toward its admissibility.

These experts gave different testimony concerning the coefficient of friction. Dr. Rehling indicated it was impossible to establish a *constant* coefficient of friction under the circumstances but the appellee in this case contends that the establishment of a constant coefficient of friction is of relative unimportance, particularly in light of the fact that Mr. Robinson used a coefficient of friction favorable to the appellant-defendant's position which, in effect, means that any doubt was decided in favor of the appellant-defendant.

These experts also differed on the approach that Mr. Robinson used in determining the speed to do the damage to the vehicle. While both agreed there was a scientific method following the laws of

mechanical physics which would bring about a precise determination, Mr. Robinson based his opinion upon his experience of ten years of observing controlled tests and films of such tests. Dr. Rehling admitted that he had never participated in or viewed such tests. Dr. Rehling felt that if such were followed it would be only a crude approximation. This Court feels such difference in testimony is a matter which goes to the weight rather than to the admissibility. An analogy to this type of expert testimony is frequently seen when expert witnesses testify about real estate values. Comparison is the very heart of such expert testimony.

█ This Court does not wish to be understood as holding that in all cases of automobile collisions such evidence by any self-proclaimed expert is admissible, but as in every civil case where expert testimony is presented, the responsibility is on the trial court to satisfy itself of the requirements of the law regarding admissibility. If this responsibility is exercised with care so that reasonable expert testimony is presented based upon reasonably sound scientific approaches, then this Court will not reverse in the absence of an abuse of discretion.

For the reason heretofore expressed, this case must be reversed and remanded.

Reversed and remanded.

HARWOOD, and MADDOX, JJ., concur.

LAWSON, J., concurs specially in part and dissents in part.

MERRILL, J., concurs in the result.

LAWSON, Justice (concurring in part and dissenting in part):

I agree with the treatment of the written charges which were given at the request of the plaintiff below, including the holding that the giving of plaintiff's written Charge 4 must work a reversal of the judgment of the trial court.

It is my opinion that the trial court erred to a reversal in admitting the testimony of the witness Henry G. Robinson, a so-called "professional Accident Reconstruction Consultant," as to the speed of the Maslankowski automobile at point of impact.

The holding that such testimony was admissible is, in my opinion, based on a very tenuous distinction made between our cases cited in the opinion authored by the Chief Justice and the holding of the Chief Justice, in which Justices Harwood and Maddox concur. The cited cases hold, in effect, that testimony of the kind given by Robinson is not admissible when sought to be elicited from an accident investigator in the employ of the state or a municipality, despite the number of investigations he may have made immediately after accidents.

Perhaps if such accident investigators are hereinafter permitted to call themselves "Accident Reconstruction Consultants" their testimony will be admissible.

Not being a physicist and not understanding Mr. Robinson's "formula," in which the "coefficient of friction," whatever that is, apparently played a large part, I feel compelled to the conclusion that Robinson should not have been permitted to give such testimony, thereby working a "snow job" on the jury with his impressive title. In so far as I can determine, he adopted the title himself or it was conferred upon him by his employers.

The case of Mobile City Lines v. Alexander, 249 Ala. 107, 112–113, 30 So.2d 4, 8, is not mentioned in the opinion authored by the Chief Justice. In that case we said: ". . . we think it a matter of common knowledge that when two such moving objects collide at a rate of speed as shown by the evidence in this case that they may behave in a manner which *seemingly* defies all the laws of physics. . . ."

Robinson took cognizance of certain facts which existed prior to impact, as well as the manner in which the moving objects behaved after impact and says, in effect,

that he can tell how fast one of those objects was moving at the time of impact. In my opinion, Robinson's testimony as to the speed of the Maslankowski automobile at time of impact was nothing more than a sugar-coated guess; that is, a guess sugar-coated by recitation of Robinson's claimed academic and laboratory experiences. Those experiences aside, and I am not impressed by them, it is not shown that there was any reason to accept his opinion over that of an experienced accident investigator for a state or municipality, and the opinion authored by the Chief Justice candidly admits that like testimony given by such investigators would not be admissible.

I refrain from expressing a view as to the action of the trial court in refusing the general affirmative charge or charges requested by Maslankowski or his contention that the trial court erred in overruling the grounds of his motion for a new trial which took the position, in effect, that the verdict was not sustained by the great weight of the evidence.