[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1260 
This is a breach of contract case.
Alvis Gulledge was employed by Basin Coal Company. His job was to persuade landowners to sign leases or options to drill prepared by Basin Coal, allowing Basin Coal to test the land for coal and to stripmine if it was feasible. Gulledge's employment contract was oral. He was to be paid $350 per week and a $10 per acre bonus on land that he acquired that was economically feasible for Basin Coal to mine.
Gulledge claims that Basin Coal failed to pay him the agreed upon $10 bonus on 1,250 acres of land. (There were 2,367 acres of land originally at issue, but the court dismissed at trial as to all except 1,250 acres.) Basin Coal contends that they do not owe him a bonus since none of the 1,250 acres were economically feasible to mine. The jury returned a verdict for $5,000 in Gulledges favor. From that judgment Basin Coal appeals.
Basin Coal first contends that the trial court violated the best evidence rule in allowing Gulledge to testify about the terms of the leases he had obtained since the originals were available. The best evidence rule is a precaution against fraud, requiring an available instrument which is at issue to be introduced at trial rather than accepting mere oral testimony about its terms. C. Gamble, McElroy's AlabamaEvidence §§ 212.01, 212.02 (3d ed. 1977).
However, for any issue to be preserved for appellate review, it must be timely raised in the trial court. Stephens v.Central of Georgia Railroad, 367 So.2d 192 (Ala. 1979). Seealso, Rule 46, Alabama Rules of Civil Procedure. In the case at bar counsel for Gulledge asked Gulledge:
 "Now then, after you talked to Mr. Reed did you go out and sign up some coal leases?
"A. Yes, sir, I did."
Shortly thereafter, in defining the extent of the leases, Gulledge was asked:
 "Q. All right, how many acres of land did you have available for Mr. Reed to mine on had he chosen?
"A. Approximately 2,367 acres."
No objection was made to either question. The best evidence objection was made later, when Gulledge was asked the name of the owners of the leased land. At that point the existence and amount of land covered by the leases were already before the jury without objection, and this was the only material aspect of the leases. Once the leases and the number of acres they covered was before the jury without objection, the only remaining issue was whether the land had coal on it that Basin Coal could feasibly mine.
Basin Coal next contends that the trial court erred in permitting Gulledge to state his opinion about the location and extent of subterranean coal seams on the leased land. We disagree. It is provided that "opinions of experts on any question of science, skill, trade or like questions are always admissible." § 12-21-160, Code 1975. Whether a witness is adequately qualified to testify as an expert is within the sound discretion of the trial court and subject to reversal only for either a clear abuse of that discretion or where the decision was palpably and clearly wrong. Alabama Power Co. v.Henderson, 342 So.2d 323 (Ala. 1976); Maslankowski v. Beam, *Page 1261 288 Ala. 254, 259 So.2d 804 (1972); Wilson v. Hudson,429 So.2d 1090 (Ala.Civ.App. 1983).
An expert, for purposes of trial testimony, is a witness in possession of knowledge that is beyond the ken of the average layman and that the trial court deems helpful to the jury.Independent Life Accident Insurance Co. v. Aaron, 282 Ala. 685, 213 So.2d 847 (Ala. 1968). His expertise may be acquired by professional education, observation, practice, or experience. Federal Mogul Corp. v. Universal Construction Co.,376 So.2d 716 (Ala.Civ.App.), writ denied, Ex parte InterstateRoofing Co., 376 So.2d 726 and Ex parte Johns-Manville SalesCorp., 376 So.2d 726 (Ala. 1979).
The testimony showed that Gulledge was employed by several coal companies intermittently for a decade. He has worked as a safety employee at strip mines, operated heavy equipment in the strip mine pit, and has supervised others in the mine. He has mined coal in the area at issue, and was able to observe the coal in the mines. He visited the acres at issue and saw coal above the ground on some of them when he acquired the leases. While Gulledge has no other training in mining, we cannot say that the trial court abused its discretion in allowing Gulledge to testify as an expert since he had knowledge beyond that of the average layman. The jury heard Gulledge's qualifications and can take that into account in determining the weight his testimony should be given. See Johnson v. State, 378 So.2d 1164
(Ala.Crim.App.), writ quashed, 378 So.2d 1173 (Ala. 1979).
Basin Coal next challenges the propriety of the trial court's order denying its respective motions for a directed verdict made at the close of Gulledge's case-in-chief and at the close of all the evidence, as well as the denial of its motion for j.n.o.v.
The standard by which we must determine the propriety of the trial court's refusal to grant the motion for a directed verdict and for a j.n.o.v. is the scintilla rule. Rule 50 (e), A.R.Civ.P. See also, Gulf States Paper Corp. v. Hawkins,444 So.2d 381 (Ala. 1983); Battles v. San Ann Service, Inc.,441 So.2d 925 (Ala.Civ.App. 1983). Thus, the trial court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party to see whether there is a scintilla of evidence in support of the theory of the complaint. Carnival Cruise Lines, Inc. v. Snoddy,457 So.2d 379 (Ala. 1984); Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982);Transport Acceptance Corp. v. Matheny, 460 So.2d 1320
(Ala.Civ.App. 1984). If there is evidence sufficient to take the case to the jury against a motion for a directed verdict, there is likewise sufficient evidence to withstand a motion for j.n.o.v. Casey v. Jones, 410 So.2d 5 (Ala. 1981).
In the present case there was sufficient evidence before the jury to defeat the motions. Viewing the evidence in the light most favorable to Gulledge, we find the following:
At the close of Gulledge's case-in-chief, there was testimony before the jury that Gulledge and Basin Coal had a contract whereby Basin Coal was to pay Gulledge a $10 per acre bonus for minable land on which he obtained leases; that Gulledge obtained leases on land; and that the land had previously been strip-mined successfully. Thus, there was at least a scintilla of evidence to defeat Basin Coal's original motion for a directed verdict.
At the close of all the evidence, in addition to the aforementioned testimony, there was testimony by the person who determined whether the leased land had minable coal on it for Basin Coal that he was not very familiar with some of the acres and that some of it had not even been tested for coal. There was therefore ample evidence for the case to go to the jury.
Thus, we find evidence in the record to support the trial court's denial of the motions for a directed verdict and a j.n.o.v. A factual dispute existed as to whether Gulledge presented Basin Coal with leases for *Page 1262 
land that held coal that was economically feasible to mine.
Finally, Basin Coal contends that the trial court erred in not granting its motion for a new trial. In the main, Basin Coal contends that the jury verdict was against the great weight of the evidence and therefore palpably wrong and unjust. Again, we disagree. When the ground for a motion for a new trial is that the jury verdict, which is presumptively correct, is contrary to the evidence, we reverse only if after allowing all reasonable presumptions of correctness the preponderance of the evidence is such that the reviewing court is clearly convinced that the verdict was wrong and unjust. Kent v.Singleton, 457 So.2d 356 (Ala. 1984); Merrill v. Badgett,385 So.2d 1316 (Ala.Civ.App.), cert. denied, 385 So.2d 1319 (Ala. 1980). There is a strong presumption of correctness indulged in favor of the trial court regarding its ruling on a motion for a new trial. Johnson v. Cleveland, 460 So.2d 1257 (Ala. 1984). Having viewed the evidence as set out above, we cannot say that the trial court erred to reversal in refusing to grant a new trial.
In view of the above, the trial court committed no reversible error.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.