The appellant, Alfred Jackson, was indicted for manslaughter. See § 13A-6-3(a)(1), Code of Alabama 1975. He was found guilty as charged in the indictment and was sentenced to three years' imprisonment. His sentence was split, and he was ordered to serve eight months in the Lowndes County jail and the remainder of the sentence under supervised probation.
The facts adduced at the trial tend to establish the following. On May 10, 1991, the victim, Arnell Means, and her two sons were travelling on county road 13 to Selma, Alabama, in a red Pontiac Grand Am automobile. Witnesses testified that it was a rainy day. According to the victim's sons, because the rain was increasing the victim decided to return home, and she turned on her left turn signal before turning into a driveway to turn around. Her sons stated that as she proceeded to turn, the appellant's vehicle, a Ford LTD automobile, collided with the victim's vehicle on the driver's side. Witnesses stated that the impact propelled the two vehicles into a nearby ditch. Arnell Means died as a result of blunt force injuries to her chest, according to a forensic expert.
A traffic homicide investigator, Anthony Frost, testified that he arrived at the scene of the accident and that he took photographs of the scene. Frost also testified that he took measurements at the scene and that he found no skid marks to indicate that either driver applied their brakes before the impact.
Frost also testified that he took a statement from the appellant. That statement was read into evidence. In the statement, the appellant told a law enforcement officer that he had two beers before the accident. He further stated:
 "I traveled County Road 2 to the intersection of County Road 13 and turned onto County Road 13. I drove four or four and a half miles. It was drizzling rain. I noticed a school bus ahead. It appeared to be moving towards County Road 17. A light brown late '60 or '70 model Chevy truck was behind the bus. I started to pass the truck and the bus. I noticed another car between the truck and the bus when I pulled alongside the truck. Then the car, a maroon Grand Am, made a left turn. I slammed on the brakes and then made contact with the car. I don't remember what exactly happened then. The truck appeared to be going about 40 miles per hour. My speed was around 50 or 55 miles per hour. I did not trail the truck. I started to pass as I approached the truck. . . ."
William Taylor testified that he saw the accident occur. He stated that the victim did not signal before she turned. In a statement he gave to investigating officers at the scene, he stated that it seemed as though the appellant was travelling around 90 to 95 miles per hour. Taylor testified at trial that it may have only seemed that fast to him because he was only travelling at 30 to 35 miles per hour when the appellant passed him. He further testified that he could not give an accurate estimate as to the speed of the appellant's vehicle.
Corporal B.J. Turner, an accident reconstruction expert with the Alabama Department of Public Safety, testified that he had examined the vehicles and the scene of the accident. Turner stated that he began his investigation on May 20, 1991. Turner testified that he gathered data and tested the scene. Turner stated that based upon his examinations it was his opinion that the appellant's vehicle was travelling at 93 miles per hour before impact with the victim's vehicle. Turner further stated that he estimated the speed of the victim's vehicle before impact to be 19 miles per hour. Turner testified that after the impact, the vehicles travelled over 200 feet.
An expert for the appellant testified that, because of uncertainties in Turner's data, Turner's opinion as to the speed of the appellant's vehicle could be wrong by as much as 40 miles per hour.
 I
The appellant first argues that the trial court erred in allowing Corporal Turner to express an opinion as to the speed of the vehicles based upon post-impact tire marks. However, after reviewing Corporal Turner's testimony, this court is convinced that he *Page 1277 
based his opinion about the speed of the vehicles on other factors, in addition to the post-impact tire marks. Corporal Turner testified that he examined and performed tests at the scene of the accident and that he examined the damage to the vehicles involved in the accident. Turner determined the direction and angle of the vehicles at impact and after impact. Turner explained the tests he performed and the devices he used to perform the tests.
Decisions addressing this issue of whether an expert witness may express an opinion as to a vehicle's speed based on post-impact skid marks have been confusing. In the past, the Alabama Supreme Court has held that an expert may not base an opinion as to the speed of a vehicle on post-impact skid marks. See, e.g., McWhorter v. Clark, 342 So.2d 903 (Ala. 1977);Jowers v. Dauphin, 273 Ala. 567, 143 So.2d 167 (1962); Baggettv. Allen, 273 Ala. 164, 137 So.2d 37 (1962).
However, the Alabama Supreme Court has recognized the expansion of expert knowledge in this area and, has recognized that with sufficient information, training, and experience, a properly qualified expert may express an opinion with regard to the speed of an automobile based, in part, upon post-impact skid marks. Maslankowski v. Beam, 288 Ala. 254, 265,259 So.2d 804, 814 (1972).
In Maslankowski, the court stated:
 "The appellant contends that the admissibility of [an expert's opinion based, in part, upon post-impact skid marks] is contrary to a number of cases in this state, which appellant maintains have held, in substance, that expert testimony is not permissible if such opinion evidence is based upon physical facts brought into being from the impact of the motor vehicles. The appellant cites in support of this contention Williams v. Roche Undertaking Company, 255 Ala. 56, 49 So.2d 902
(1950); Jowers v. Dauphin, 273 Ala. 567, 143 So.2d 167 (1962); Baggett v. Allen, 273 Ala. 164, 137 So.2d 37 (1962); Campbell v. Barlow, 274 Ala. 627, 150 So.2d 359 (1962); Stanley v. Hayes, 276 Ala. 532, 165 So.2d 84 (1964) and Holuska v. Moore, 286 Ala. 268, 239 So.2d 192 (1970). In addition to these cases we have also considered the case of Giles v. Gardner, 287 Ala. 166, 249 So.2d 824
[(1971)], which was recently decided by this Court.
 "In each of these cases there was no similar expert before the trial court. In practically all of these cases the expert was a law enforcement officer, usually the investigating officer. In such cases, the so-called expert testified, or offered to testify, that he had observed the physical facts around the accident and that his estimate of speed was based upon such physical facts and his experience in investigating accidents. No explanation of the scientific methods employed, if any, were ever presented to the trial court. In each of those cases, this Court was motivated to think, since there was such a sparsity of scientific information presented, that the trial court correctly ruled such opinion testimony inadmissible; or, on the other hand, that the trial court abused its discretion in allowing such so-called expert testimony to be presented to the jury.
 "This Court does not interpret these cases as holding that regardless of the qualification of the expert, the scientific methods employed and the quantum of scientific data presented that, nevertheless, any such expert testimony is inadmissible as a matter of law. To so rule would indicate that this Court has engaged in a fact-finding function which appellate courts scrupulously avoid where the witnesses testify before the court and jury.
 "With recent technological developments in the fields of medicine, engineering, physics and mathematics we are now living in a world which has become increasingly more complex. It is important that our court system utilize sound technological advancements in judicial proceedings to bring evidence of greater certainty and exactness before the jury."
288 Ala. at 269, 259 So.2d at 818.
In this case, Turner, the State's expert witness, was not merely the investigating officer for the accident. Rather, he was contacted by law enforcement officers to reconstruct the accident. Additionally, Turner testified as to his qualifications. He had taken many courses on accident reconstruction *Page 1278 
and had conducted 30 to 40 field accident reconstructions, which did not include those accident reconstructions he conducted as a part of his work in the courses he had taken. Turner testified that he had taught accident reconstruction courses and that he has testified on several occasions concerning accident reconstructions that he performed.
Turner explained for the trial court and the jury the scientific methods he employed in reconstructing the accident. He explained what physical evidence he examined and how he arrived at his opinion. Finally, although the defense submitted a motion in limine to preclude Turner's opinion testimony as to the speed of the appellant's vehicle, no objection was made on the basis that Turner was not a qualified expert in accident reconstruction.
In Hanks v. State, 562 So.2d 536, 538 (Ala.Crim.App.),rev'd on other grounds, 562 So.2d 540 (Ala. 1989), this court held that a trial court did not abuse its discretion in allowing a police officer who was properly qualified as an expert to express his opinion about the speed of the defendant's vehicle before impact where there existed sufficient scientific data upon which he could reasonably base the opinion.
Moreover, we held that the contention by the appellant that the data was inadequate applies to the weight of the opinion testimony rather than to its admissibility. Id. Thus, the appellant's contention that Turner's opinion was based upon conjecture or speculation is without merit.
In this case, we hold that the trial court did not abuse its discretion in allowing Turner to testify as an expert and to present his opinion as to the speed of the appellant's vehicle because Turner testified with sufficient specificity as to the scientific data upon which he based his opinion and he testified to the scientific methods he employed.
 II
The appellant contends that the information Turner obtained regarding the conditions at the scene of the accident, such as the weather and the amount of water on the road at the time of the collision, was obtained by Anthony Frost, the traffic homicide investigator who investigated the scene shortly after the collision. The appellant contends that because Turner had no personal knowledge of the conditions at the scene, the trial court should have restricted his testimony to facts and should have allowed him to offer his opinion only in response to hypothetical questions. Thus, the appellant argues that the trial court erred in failing to sustain his objections to Turner's testimony.
We have searched the record for the appellant's objections on the basis that the questions posed to Turner were not in the form of hypotheticals, and we have found none. General grounds for an objection waive all specific grounds and do not preserve an issue for review on appeal. Whitley v. State, 607 So.2d 354
(Ala.Crim.App. 1992). The appellant argues for the first time on appeal that the questions posed to Turner were not in the form of hypotheticals. This court will not consider this argument, which was not raised before the trial court. Watleyv. State, 568 So.2d 852 (Ala.Crim.App. 1989), writ quashed,568 So.2d 857 (Ala. 1990).
 III
The appellant contends that the trial court erred in finding that the appellant failed to establish a prima facie case of racial discrimination in the prosecution's striking of the jury pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986).
The appellant argued to the trial court that the State used 6 of its 10 peremptory challenges in a racially discriminatory manner to remove blacks from the jury venire. The appellant argued to the court that the ratio of blacks to whites in Lowndes County is higher than the black-to-white ratio that remained on the petit jury after the prosecution's strikes. The trial court found that the appellant had failed to establish a prima facie case of racial discrimination. We agree.
As to the appellant's first contention that the State's use of 6 of its 10 peremptory challenges to remove blacks from the jury venire violated Batson, this court has held that such an argument is insufficient to establish a prima facie case of racial discrimination under Batson. DeFries v. State, *Page 1279 597 So.2d 742, 741 (Ala.Crim.App. 1992). The appellant must present some relevant evidence other than the mere number of strikes against blacks to establish a prima facie case of discrimination. Id. The appellant failed to present to the trial court any evidence regarding the pattern of strikes against blacks, the prosecutor's past conduct in selecting juries, or any other relevant information set forth in Ex parteBranch, 526 So.2d 609 (Ala. 1987).
As to the appellant's allegations that there was a disparity between the ratio of blacks to whites in Lowndes County when compared to the ratio of blacks to whites on the petit jury, this argument is relevant to consideration of a fair cross section argument rather than a Batson argument. Moreover, we note that the defense struck four blacks from the venire, which accounts for some of the alleged disparity. In DeFries, this court held that a defendant had failed to establish a prima facie case of racial discrimination when the defendant struck the same number of blacks from the jury. 597 So.2d at 751. This court stated, "When both parties engage in the same outward conduct, the defendant does not establish that the State's inward motivation was 'bad' by arguing that his own was 'good.' " Id.
Therefore, we hold that the trial court correctly held that the appellant failed to establish a prima facie case of discrimination under Batson.
 IV
The appellant's last contention is that the trial court erred in denying his untimely motion to supplement the record on appeal pursuant to Rule 10(g), Ala.R.App.P. Because this court ordered that the appellate record be supplemented in order to address certain issues on appeal, the issue is moot for purposes of this opinion.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.